**OCCIDENTAL LIFE INS. CO. OF CALI-
FORNIA v. LAME ELK
WHITE HORSE.**

**LAME ELK WHITE HORSE v. OCCI-
DENTAL LIFE INS. CO. OF
CALIFORNIA.**

Nos. 914, 915.

Municipal Court of Appeals for the
District of Columbia.

Argued April 24, 1950.

Decided June 28, 1950.

Louis M. Denit, Washington, D. C., Thomas S. Jackson, A. Leckie Cox and P. Baxter Davis, all of Washington, D. C., on the brief, for Occidental Life Ins. Co. of Cal.

Robert H. McNeill, Washington, D. C., T. Bruce Fuller, Washington, D. C., on the brief, for Lame Elk White Horse.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Lame Elk White Horse, hereafter called plaintiff, on May 17, 1946, was issued a health and accident policy by Occidental Life Insurance Company, hereafter called the company, through its agent Rodgers at El Monte, California, in which state plaintiff was then living. The policy lapsed on September 1. 1946. On March 10, 1947, plaintiff, then staying at the home of his mother-in-law in Kings Mountain, North Carolina, wrote to the company inquiring as to the date his policy had lapsed, and what payment would be necessary to put the policy again in force. About March 21 Rodgers wrote to plaintiff enclosing two identical forms of application for insurance. Apparently in accordance with instructions from Rodgers plaintiff signed both applications but filled out only one. The completed application was dated by plaintiff at Kings Mountain, on March 29, 1947, and gave his residence as Falls Church, Virginia. On the last named date plaintiff mailed the two applications to Rodgers, enclosing $28 in cash, Rodgers having apparently notified him to send $27.-25 as one quarter's premium. Rodgers' records showed that he did not receive this letter until April 14, but there was evidence tending to show that it was received at an earlier date. Rodgers filled in the signed but uncompleted application, conforming it to the completed one except that he dated it at El Monte April 14. Both applications were forwarded by Rodgers to an employee of the company with request that one be submitted to the company. However Rodgers on apparently the same day mailed to plaintiff a "binding receipt" bearing the same number as the application completed by plaintiff and reading as follows:

"Binding Receipt
"Occidental Life Insurance Company of California, Los Angeles
No. 335456
"RECEIVED OF *Lame Elk Whitehorse* Applicant

the sum of *$27.25* on account of *quarterly* premium on the proposed insurance in accordance with the application bearing same number as this receipt. This payment is made and accepted subject to the following conditions:

"If, on the date of this payment, the applicant, in the opinion of the Company's authorized officers in Los Angeles, was insurable and acceptable as a standard risk under its rules and practices for the policy or policies exactly as applied for, the policy or policies will be dated and made effective as of the date of this payment in accordance with its or their terms; otherwise there

shall be no liability on the part of the Company, except to return this payment to the applicant upon surrender of this receipt.

"This receipt is subject to the condition that any check or draft remitted in exchange for this receipt shall be honored upon first presentation through usual banking facilities.

"Dated at *Elmonte Calif.*, on *April 14*-1947
  Place                                   Date
*10:00* A.M.
  Time
                "/s/  Ray L. Rodgers
                    Authorized Agent
  "This receipt must not be detached unless a binding payment is made."

On the back of the receipt Rodgers wrote as follows:

"Mr. Whitehorse—
"Thank you for your prompt reply to my letter—this will pay your Insurance up to July 1st 1947—I will send your reinstated policy to you just as soon as it is issued—
              "Very truly your friend
          /s/  "Ray L. Rodgers
                        Agt"

This receipt was received by plaintiff about April 20. In the meantime, on April 2, plaintiff was injured in an automobile accident in North Carolina. Notice of the injury was sent to Rodgers and on April 21 he wrote that the applications and money had not reached him until April 14 and that the company said that as it did not have the money on the date of the accident the policy was "not reinstated early enough" for plaintiff to be entitled to benefits, and that the premium would be returned. The company later mailed a check for the premium but it was refused by plaintiff.

Thereafter plaintiff filed suit for benefits at $100 per month being the benefits provided by his former policy and by the policy applied for.

The trial court, in a memorandum opinion citing cases to the effect that an agreement between the parties becomes complete and binding when the offeree deposits in the mail his acceptance of the offer, concluded "there was a sufficient offer and acceptance between the parties to this action so as to constitute a binding contract in existence prior to plaintiff's accident."

The trial court awarded plaintiff the sum of $1,200 representing monthly benefits of $100 for twelve months. Additional recovery was denied on the ground that the policy provided for payments after twelve months only if the insured was wholly and continuously disabled from engaging in any occupation or employment for wage or profit, and that at the end of the twelve months period plaintiff was not so disabled as to be incapable of performing a desk job.

The company has appealed from the judgment against it and the plaintiff has cross-appealed from disallowance of benefits beyond the twelve months period.

■ Two preliminary questions require consideration. This case was partially tried in November 1947. Because of the death of the trial judge, it was retried in February 1948. While the case was under advisement, plaintiff without knowledge of his counsel took a voluntary nonsuit. Thereafter his counsel moved to set aside the nonsuit and reinstate the action. It appeared that at the time plaintiff took the nonsuit he had been declared of unsound mind in the State of Texas and his wife appointed as guardian. The trial court granted the motion to reinstate.[1] We think setting aside the nonsuit and reinstating the action was within the trial court's discretion and that such discretion was properly exercised here.[2]

■ In connection with the above question was raised as to the competency of

1. Thereafter the wife was appointed ancillary committee of plaintiff by the United States District Court for the District of Columbia and a certified copy of such order filed in this case. The case thereafter proceeded with apparently no formal substitution of parties.

2. Zimmerman v. Western Builders' & Salvage Co., 38 Ariz. 91, 297 P. 449; Isaacs v. Jones, 135 Cal.App. 47, 26 P. 2d 533; Lusas v. St. Patrick's Roman Catholic Church Corp., 123 Conn. 166, 193 A. 204, 111 A.L.R. 763. Cf. Jackson v. Merritt, 21 D.C. 276, 287.

438

plaintiff to testify in view of his having been adjudicated of unsound mind. The court permitted him to testify and we think properly so. Such a person may testify if the trial court finds him to have sufficient understanding of the obligation of an oath and to be capable of giving a correct account of what he has seen and heard.[3]

■ Going to the merits of the appeal, we have found no authorities which would sustain the conclusion that the mere mailing of the application for insurance by the company constituted an offer which was accepted by completion of the application and mailing it and the first premium. The cases relied on by the trial court[4] dealt with situations whereby a series of correspondence between an applicant and an insurance company has resulted in an offer and acceptance. Here, however, prior to plaintiff's mailing the applications and premium there were only two letters, one from plaintiff inquiring as to putting his insurance back in force, and the reply from Rodgers enclosing the applications. If the mailing of the applications and premium constituted an acceptance of an offer, then the offer must have been contained in Rodgers' letter. However, Rodgers' letter was not in evidence, no copy having been made by him and the original having been lost by plaintiff. Therefore in our opinion there was no basis in the record for holding that there was an offer and acceptance prior to the accident. Plaintiff attempted to testify to the contents of Rodgers' letter but the trial court sustained an objection to that testimony. In this there was error.[5] Circumstances in the case might throw doubt on the accuracy of plaintiff's recollection as to the contents of the letter, but this would go to its weight and not to its admissibility. There must be a new trial in order to determine the effect to be given to Rodgers' letter. Whether it constituted an offer will depend not only on its contents but on the extent of Rodgers' authority.

■ Plaintiff has argued another basis of recovery, not wholly dependent upon the correspondence prior to the accident. This possible recovery depends on the effect and interpretation given to the binding receipt. The effect of binding receipts in insurance cases has been the subject of many judicial opinions and the authorities are far from being in accord.[6] The diversity of opinion is in part due to the varying forms of receipts issued. This receipt was issued in California and the law of that state should control, because if the insurance was effected by the receipt the last essential act to create the insurance took place in California. However we have found no case in that state dealing with this particular type of receipt. From the plain language of the receipt we think the company bound itself to insure plaintiff if on the date of the payment plaintiff, in the opinion of the company's officers, was insurable and acceptable as a standard risk under its rules and practices, and that such insurance would be made effective as of the date of payment. The company reserved no right to arbitrarily refuse to insure plaintiff. The receipt was entitled "binding" and should be given some binding effect. Having bound itself to issue the policy except in the event of one specified condition, we think the burden is upon defendant, if it so contends, to show that such condition occurred.

■ However, assuming the absence of a condition justifying a refusal to issue the policy, plaintiff cannot base a recovery on the binding receipt unless "date of this payment" as specified in the receipt antedated his accident on April 2. It should be noted that the receipt does not state that the

3. District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618; Lockard v. Parker, 4 Cir., 164 F.2d 804.

4. Tayloe v. Merchants' Fire Ins. Co. of Baltimore, 9 How. 390, 13 L.Ed. 187; Eames v. Home Ins. Co., 94 U.S. 621, 24 L.Ed. 298; National Quicksilver Corp. v. World Ins. Co., 8 Cir., 139 F.2d 1.

5. General Motors Acceptance Corp. v. American Ins. Co., 5 Cir., 50 F.2d 803, certiorari denied, 284 U.S. 676, 52 S.Ct. 130, 76 L.Ed. 571; Eames v. Home Ins. Co., 94 U.S. 621, 24 L.Ed. 298.

6. See Annotation, 2 A.L.R.2d 943.

insurance would be effective as of the date of the receipt but instead date of payment. The question arises whether the parties intended date of payment to be the date of the receipt or the date plaintiff deposited the payment in the mail. Rodgers, the company agent who issued the receipt, wrote on the back that the quarterly premium paid the insurance up to July 1, showing he understood date of payment to be April 1. As shown by the testimony of an employee of the post office at King's Mountain, plaintiff was anxious to have the letter enclosing the applications and money show post-office cancellation stamp as of March 29. Plaintiff evidently attached importance to the date of mailing. Perhaps this was because of his erroneous impression that his former policy had not lapsed until December 31, 1946, and could be reinstated within ninety days thereafter, or perhaps it was because of something contained in Rodgers' letter. Again we think the contents of Rodgers' letter was admissible for whatever light it might throw on the vital question of the effective date of the insurance—the date of payment referred to in the receipt. We do not hold that Rodgers by his statements could contradict or vary the plain terms of the binding receipt, but we do hold that "date of this payment" is not plain and unambiguous and that the statements of the agent who was authorized to sign and issue the receipt are admissible in determining the meaning to be given to an ambiguous expression in that receipt.

Accordingly we hold that if date of payment, as used in the receipt, meant either March 29, the date payment was mailed by plaintiff, or April 1, the date adopted by Rodgers, and if on that date plaintiff was insurable and acceptable as a standard risk under the company's rules and practices, then plaintiff was insured on April 2, the date of his accident. These questions must be determined as a fact on retrial.

On plaintiff's cross-appeal he contends that the court was in error in denying him recovery beyond the twelve months period. Recovery beyond that period depended upon whether at such time plaintiff was wholly and continuously disabled by his injury from engaging in any occupation or employment for wages or profit. The trial court found that at the end of this period plaintiff was not so disabled as to be incapable of performing a desk job. There was medical testimony that he could perform such work and the only evidence as to his occupation of construction engineer indicated that a portion of his work—perhaps the greater portion—consisted of office duties and drawing prints. The California courts have been fairly liberal in interpreting total disability as used in insurance policies of the type here involved and hold that total disability, as so interpreted, is a question of fact.[7] On the record before us we cannot say that the trial court's finding was without substantial support in the evidence, but in view of the necessity for retrial on the question of liability we feel that the extent of such liability, if any, should also be retried. Accordingly we order a retrial on all issues.

Reversed with instructions to grant a new trial.

7. Erreca v. Western States Life Ins. Co., 19 Cal.2d 388, 121 P.2d 689, 141 A.L.R. 68.