STAGECRAFTERS CLUB, Inc. v. DIS-
TRICT OF COLUMBIA.

ELLISTON et al. v. DISTRICT OF
COLUMBIA.

Nos. 1187, 1188.

Municipal Court of Appeals
District of Columbia.

Argued May 14, 1952.

Decided June 17, 1952.

James J. Laughlin and Albert J. Ahern, Jr., Washington, D. C., for appellants.

Edward A. Beard, Assistant Corporation Counsel, Washington, D. C., with whom Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

After a trial by jury three defendants were convicted on four counts of keeping for sale and selling alcoholic beverages without a license in violation of D.C.Code, 1940, § 25–109. Defendant Stagecrafters Club was a corporation organized as a non-profit social club operating an "after-hours bottle club", the facilities of which were available only to members and their guests. Typical of these clubs is the fact that a member provides his own liquor for private use after the hour at which the sale of alcoholic beverages is prohibited. Defendants Ferroni and Elliston were president and manager respectively of Stagecrafters.

The prosecution resulted from an investigation by the Metropolitan Police Department in which two policemen acted as undercover men. One of these, Officer Gordon, joined the club under an assumed name and was accompanied on visits to the club by Officer Matthews who was a "guest."

The officers appeared before the U. S. Commissioner and signed an affidavit alleging that whisky had been sold to them in violation of law on two separate occasions by Stagecrafters' employees. The warrant was issued, Stagecrafters was raided and numerous items of personal property including a large number of whisky bottles were seized and the individual defendants were arrested. Subsequently, the information was filed and defendants then filed motions to suppress the evidence and to dismiss the information. These motions were denied and the case was then tried on the merits, resulting as we have said, in convictions.

Defendants first assign as error the denial of the motion to suppress. The statement of proceedings and evidence discloses that at no time during the trial did the Government introduce into evidence any articles seized during the raid, and that it was at the demand of counsel for defendants that ninety-six whisky bottles were exhibited to the jury. Thus it is immediately apparent that this claim of error is without any basis in law or fact. With regard to the property seized, defendants were no more prejudiced than if the motion to suppress had been granted. Any prejudice resulting from the display of the whisky bottles in the court room was caused by the action of defendants' own counsel.

Defendants suggest that because the evidence was not properly obtained under the warrant the motion to quash the information should have been granted.[1] At the hearing on the motion Officers Gordon and Matthews testified that while in the Stagecrafters Club they bought drinks of whisky. Thus there were allegations sufficient to issue the information apart from any proceedings relative to the search warrant and property seized thereunder.

Appellants next argue that it was evident from the testimony at the hearing that the two officers were not mentally competent to understand the transactions which occurred around them and for that reason the motion should have been granted. This argument is based on portions of the testimony wherein it appeared that the two officers made repeated references to notes for the purpose of refreshing their memories, and on conclusions of law stated by the officers in responding to cross-examination by defendants' counsel.

We need not decide whether an information must always be founded on legally competent evidence,[2] because assuming that were so, appellants would not be aided thereby. Even a person of doubtful capacity or competency may be permitted to testify if he has sufficient understanding of the nature of an oath and is capable of giving a correct account of what he has seen and heard. District of Columbia v. Armes, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618; Lockard v. Parker, 4 Cir., 164 F.2d 804; Occidental Life Ins. Co. v. Lame Elk White Horse, D.C.Mun.App., 74 A.2d 435. Whether or not a witness possesses the requisite mental capacity is a preliminary question addressed to the discretion of the judge and his determination will not be disturbed on review unless it was clearly erroneous. Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244; District of Columbia v. Armes, supra; Fowel v. Wood, D.C. Mun.App., 62 A.2d 636. It was therefore within the province of the motions judge to determine whether or not the witnesses met the above-stated test of competency. A record which discloses only an inability of the officers to recall from unprompted memory, and that parts of the testimony gave conclusions of law, would not justify this court in saying these witnesses were legally incompetent.

Appellants argue that Gordon and Matthews practiced fraud and deception on the defendants in gaining access to Stagecrafters Club and in winning the sympathy of the individual defendants. They contend that the case is governed by Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 57 F.2d 93, 94. It is by no means clear from the record what action of the trial court is being challenged with respect to the issue now being examined, although they say it was in connection with the denial of the motion to suppress. The record does not show that the testimony of the two officers was objected to in the main at the trial. But assuming that the issue was properly before the court we think appellants' claim of fraud and deception cannot be sustained, for the reasons we now state.

1. Under present Municipal Court Criminal Rule 10(a) it would properly be a motion to dismiss.

2. See Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Grace v. United States, 5 Cir., 4 F.2d 658, certiorari denied 268 U.S. 702, 45 S.Ct. 637, 69 L.Ed. 1165; Anderson v. United States, 8 Cir., 273 F. 20, certiorari denied 257 U.S. 647, 42 S.Ct. 56, 66 L.Ed. 415.

██ In the Eagles case, Federal prohibition officers were admitted to the lodge room of the Eagles on the false representations that they were members in good standing of a distant lodge of the same order. These misrepresentations were accomplished through the use of bona fide membership cards which had been surreptitiously taken from members of distant lodges without their knowledge and consent or that of the Order. In applying for a search warrant, they used what they had seen while in the lodge as constituting probable cause. The circuit court ruled that the evidence should have been suppressed, saying, "A search and seizure [pursuant to a warrant] following an entry into the house or office of a person suspected of crime by means of fraud, stealth, social acquaintance, or under the guise of a business call are unreasonable and violate the Fourth Amendment * * *." But the court was careful to note that: "* * * nor are we concerned with entry by prohibition agents, by like means, to such places as *saloons, night clubs* and *speakeasies* whose doors are open to all persons who desire to enter and purchase intoxicating liquors."[3] The testimony in this case clearly showed that membership in Stagecrafters was available to anyone who walked up to the door and paid the required "membership" fee. Thus our case is not only distinguishable as to the type of entry, but is much more nearly like the class of places *excepted* by the Eagles case than a bona fide fraternal organization with several branches. Officer Gordon did not obtain his membership card "surreptitiously", for by Stagecrafters' own method of issuing membership cards it was of no moment to them what the name of the applicant was. We may assume that defendants would not have given Gordon a card had they known that he was a police officer

and what his mission was. But it cannot be doubted that law enforcement officials may employ undercover agents or informants in the battle against crime;[4] and that is in reality the basis of appellants' complaint. We therefore hold that there was no fraudulent entry or entry by false representation within the meaning of the Eagles case.[5]

██ Appellants next assign as error the failure to order an acquittal because of insufficient proof of the corpus delecti. We first note that at no time during the trial did appellants question the alcoholic content of the beverages involved.[6] Nevertheless they now say that the Government should have been required to prove the alcoholic content by chemical analysis. The officers testified that from their experience in tasting and smelling liquor, it was their conclusion that the liquid purchased was liquor; and that they tasted the liquid they bought on the dates in question and it contained whisky. We rule that this was sufficient. Their knowledge, gained from experience, of the taste of whisky qualified the officers to testify that the liquid which they bought and tasted was in fact whisky or intoxicating liquor. Lewinsohn v. United States, 7 Cir., 278 F. 421; Patterson v. United States, 10 Cir., 62 F.2d 968; Smith v. United States, 4 Cir., 2 F.2d 715. From such testimony courts may take judicial notice of the alcoholic content of whisky. Meehan v. United States, 8 Cir., 24 F.2d 690; Lewinsohn v. United States, supra.[7]

██ Defendants also assign as error that they were improperly denied an opportunity to produce a witness to testify as to the funds which were expended by the prosecution preparatory to the initial search. The witness sought was the police officer who had custody of the relevant records.

3. Emphasis supplied.

4. See, e.g., United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Cratty v. United States, 82 U.S.App.D.C. 236, 163 F.2d 844.

5. Cf. United States v. On Lee, 2 Cir., 193 F.2d 306, affirmed On Lee v. United States, 72 S.Ct. 967; Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690.

6. Sec. 25–103(e) of the Code provides, "The provisions of this section and of this chapter shall not apply to any liquid or solid containing less than one half of 1 per centum of alcohol by volume * * *."

7. Cf. Keen v. United States, 8 Cir., 11 F.2d 260, where the court refused to take judicial notice of alcoholic content of "home brew."

Appellants never summoned him in advance of the trial. During the trial they sought and obtained a subpoena *duces tecum;* but the officer could not be located (it was reported that he was "at the Capitol") and the trial judge refused to further delay the proceedings. Without attempting a detailed discussion of all the circumstances, or an analysis of various vague contentions advanced by appellants, we are satisfied that we would have no right to hold that the trial court abused its discretion in refusing to delay the trial for the production of the absent witness. Harrah v. Morgenthau, 67 App.D.C. 119, 89 F.2d 863; Taylor v. Yellow Cab Co., D.C.Mun.App., 31 A.2d 683.

We come now to the contention that appellants were entitled to an acquittal for lack of evidence. The statement of evidence is badly jumbled, difficult to follow, and presents the testimony in a most inconsecutive and unsatisfactory manner. Nevertheless, we find in it sufficient evidence from which the jury could have found that the two officers bought whisky at the club from the individual defendants Ferroni and Elliston on the dates charged; that Ferroni was observed at the club while the officers were there, checking the cash register on different occasions and that he appeared to be supervising the operation of the club; that Ferroni was the president and Elliston the manager of the club. There was no error in submitting the case to the jury.

Appellants complain of certain lines of cross-examination by the prosecution. But the statement of evidence does not give us even a clue as to whether these questions were or were not responsive to the direct examination.

Another error claimed is the refusal to declare a mistrial when an officer volunteered information on cross-examination which tended to implicate one of the defendants in another offense on a date not charged in the information. Whatever may have actually happened at the trial on that point remains a mystery to this court: the woefully inadequate record is completely silent with respect thereto. Appellants say it was the duty of the judge to declare a mistrial or to correct the matter by proper instructions to the jury. But the judge's charge to the jury is entirely missing from the record, and we have no way of knowing what if anything he told the jury on the subject. We cannot decide appeals on statements contained in briefs of counsel, but must depend upon the record officially certified to us, by the trial court.[8]

Careful study of the record satisfies us that appellants have failed to establish error.

Affirmed.

---

8. Jaffe v. Sterrett Operating Services, D. C.Mun.App., 76 A.2d 780; Bovello v. Falvey Granite Co., D.C.Mun.App., 71 A.2d 536; Students Book Co. v. Semerjian, D.C.Mun.App., 66 A.2d 487.