Jorge Alberto ALVAREZ, Appellant,

v.

UNITED STATES, Appellee.

No. 88–698.

District of Columbia Court of Appeals.

Submitted May 2, 1990.
Decided June 15, 1990.

John E. Williams, Washington, D.C., was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher and Richard L. Edwards, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN and SCHWELB, Associate Judges, and REILLY, Senior Judge.

SCHWELB, Associate Judge:

Alvarez appeals from his conviction of unlawful possession of a prohibited weapon, a switchblade knife, in violation of D.C. Code § 22–3214(a) (1989). He contends that the trial judge committed reversible error in denying his pretrial motion to suppress tangible evidence, that evidence consisting of the knife which was recovered from his pocket during a search incident to his arrest. The arrest was predicated on Alvarez' possession of an open can of Budweiser beer on the sidewalk in the vicinity of a social club. Although a warning or a citation might perhaps have been a more proportionate police response to the incident, we agree with the trial judge that the officer had probable cause to believe that Alvarez was committing a misdemeanor in his presence, and was therefore authorized to arrest him. *See* D.C.Code § 23–581(a)(1) (1989). Accordingly, we affirm the conviction.

I

On January 6, 1988, at approximately 11:35 p.m., officers on routine patrol observed Alvarez and several companions socializing on a sidewalk in the vicinity of 16th and Lamont Streets in Northwest Washington, D.C. Alvarez had an open can of Budweiser in his hand. The arresting officer approached him and took the can from him.[1] After confirming by observation and smell that some beer remained

in the can, the officer placed Alvarez under arrest.

The officer did not see Alvarez drinking from the can, nor did he observe any erratic behavior on Alvarez' part. He testified that he made the arrest "because it's illegal in the District of Columbia to have an open can, open container of alcohol in public." After taking Alvarez into custody, the officer searched him and recovered the knife which led to Alvarez' conviction.

In the trial court, Alvarez filed a motion to suppress the evidence which had been seized from him. After a hearing at which only the arresting officer testified, the trial judge denied the motion. Alvarez then entered a conditional plea of guilty, preserving his right to seek appellate review of the denial of his motion. This appeal followed.

II

District of Columbia Code Section 25–128(a) (1989 Supp.) provides in pertinent part that

[n]o person shall in the District of Columbia drink any alcoholic beverage or possess in an open container any alcoholic beverage in any street, alley, park or parking....

The arrest in this case was based on Alvarez' alleged violation of this statute. In his motion to suppress in the trial court, and now on appeal, Alvarez contends simply that the sidewalk is not the street, that his conduct was lawful,[2] and that the officer lacked probable cause to arrest him.

We note at the outset that a number of other "open container" ordinances apply by their terms to sidewalks,[3] while the District's statute does not. Alvarez also argues, and we agree, that Section 25–128 is a penal statute which must be strictly construed. *Browner v. District of*

---

1. The officer testified that Alvarez handed the can to him.

2. "In the absence of a statute [or ordinance] to the contrary, mere possession of intoxicating liquor is not a crime." *See* 48 CJS *Intoxicating Liquors* § 266, at 779 (1981), and authorities cited at n. 10.

3. *See, e.g.,* the ordinances under consideration in *People v. Lee,* 58 N.Y.2d 491, 495, 448 N.E.2d 1328, 1329, 462 N.Y.S.2d 417, 418 (1983) ("any public place, including but not limited to any public highway, public street, public sidewalk ..."); and in *City of Lake Charles v. Henning,* 414 So.2d 331, 332 (La.1982) ("any public street, sidewalk, park, playground, or any unenclosed public place ...").

*Columbia,* 549 A.2d 1107, 1115–16 n. 19. (D.C.1988); *see City of Hamilton v. Collier,* 44 Ohio App.2d 419, 423, 339 N.E.2d 851, 853 (1975) (applying rule of lenity and holding that private automobile is not a public place within the meaning of "open container" ordinance). The rule of lenity does not, however, require courts to give criminal statutes their narrowest possible interpretation, and cannot substitute for common sense or the policy underlying a statute. *Lemon v. United States,* 564 A.2d 1368, 1381 (D.C.1989). "It can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leave its meaning genuinely in doubt." *Id.,* quoting *United States v. Otherson,* 637 F.2d 1276, 1285 (9th Cir. 1980). Notwithstanding the lack of specific reference in the District's statute to sidewalks as such, we do not think that such a genuine doubt exists here.

At least in the absence of contrary legislative history or some other comparable indication, courts presume that the legislature intended words in a statute to be given their plain and ordinary meaning. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Swinson v. United States,* 483 A.2d 1160, 1163 (D.C.1984). Section 25–128(a) proscribes the possession of alcohol in an open container in any "street." Although "street" is not defined in title 25 of the D.C.Code, other definitions of the word reveal that it includes the sidewalk. In the municipal regulations, "sidewalk" is defined as "that portion *of a street* between the curb lines or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians." 18

D.C.M.R. § 9901 (1987) (emphasis added). Our statutory law defines public space as

> all the property lines *on a street* ... and includes any roadway, tree space, *sidewalk,* or parking between such property lines.

D.C.Code § 7–1001(6) (1989) (emphasis added).[4] These definitions suggest that the "street" is not just the asphalt portion of the thoroughfare, intended for vehicular traffic. That more accurately describes the "roadway." The "street" includes both the roadway and the sidewalk.

The conception that a "sidewalk" is a part of the street is not unique to the District. "Generally, the term 'street' includes sidewalks, and the sidewalk constitutes a part of the street...." 39 Am. Jur.2d *Highways, Streets, and Bridges,* § 8 at 408 (1968) (footnote omitted) (collecting cases). Black's Law Dictionary (5th ed. 1979) defines sidewalk as:

> [t]hat part of a public street or highway designed for the use of pedestrians, being exclusively reserved for them, and constructed somewhat differently [from] other portions of the street.

*Id.* at 1238. *See also Town Comm'rs of Centreville v. County Comm'rs of Queen Anne's County,* 199 Md. 652, 87 A.2d 599, 601 (1952) ("Generically the term 'street' includes sidewalks.... [T]he difference in the manner of use does not render the sidewalk any less a public highway than the rest of the street.");[5] Ballantine's Law Dictionary 1178 (3d ed. 1969) ("that part of the street of a municipality which has been set apart and is used for pedestrians"). The word "street," used in its "plain and ordinary" meaning, therefore includes the sidewalk, and Section 25–128(a) necessarily prohibits the possession on the sidewalk of

**4.** *See also United States v. Grace,* 461 U.S. 171, 175–84, 103 S.Ct. 1702, 1705–11, 75 L.Ed.2d 736 (1983) (sidewalk outside Supreme Court is public place for purposes of First Amendment); *State v. Van Dyne,* 26 Ohio App.3d 95, 96, 498 N.E.2d 221, 222 (1985) (sidewalk a few feet from appellant's residence is a "public place" for purposes of Ohio's "open container" law).

**5.** Since the District of Columbia derives its common law from Maryland, decisions of the Court

of Appeals of Maryland regarding issues which have not been decided by the appellate courts of this jurisdiction are accorded great weight, and perhaps greater weight than decisions of the courts of other states, especially in relation to the law of real property. *In re Parnell's Estate,* 275 F.Supp. 609, 610 (D.D.C.1967); *see also Tydings v. Tydings,* 567 A.2d 886, 893 (D.C.1989) (concurring opinion).

an open can of Budweiser beer.[6]

Moreover, the legislative history of the "open container" statute reveals that it was designed to apply to all public areas, and that the legislative design would be frustrated by a construction which excludes sidewalks. As initially enacted in 1934, in the aftermath of the repeal of Prohibition and the adoption of the Twenty-first Amendment, the statute provided that

> [n]o person shall in the District of Columbia drink any alcoholic beverage in any street, alley, park or parking....

District of Columbia Alcoholic Beverage Control Act, 48 Stat. 319, 333 (1934), D.C. Code § 25–128(a) (1981). According to the House of Representatives report on the 1934 legislation, the statute "prohibits drinking in public places." H.R.Rep. No. 274, 73d Cong.2d Sess. 5 (1934). As previously noted, a sidewalk is within the statutory definition of a "public place."

In 1985, the Council of the District of Columbia amended the law to insert the phrase "or possess in an open container any alcoholic beverage." Ban on Possession of Open Alcoholic Beverage Containers Act of 1985, D.C. Law 6–64, § 2, 32 D.C.Reg. 5970 (1985). The area to which the expanded proscription applied remained "any street, alley, park or parking." The Report of the Council's Committee on Consumer and Regulatory Affairs described the purpose of the 1985 amendment as being "to augment existing law which prohibits drinking of alcoholic beverages *in public*, by also prohibiting the possession, *in public*, of any alcoholic beverage in an open container." *Id.* at 1 (emphasis added). The amendment was introduced "in response to complaints of drinking in public throughout the city, and the inability to prosecute persons drinking in public unless they are actually observed drinking from the container." *Id.* at 2.

The legislative history shows, then, that Congress in 1934 and the Council more

than half a century later both intended to prohibit these activities *in public*, and that they intended the words "any street, alley, park or parking," to accomplish that goal. Interpreting the statute as Alvarez urges would thwart the legislative intent. If we were to hold that the literal definition of "street" includes only the roadway, a statute designed to prohibit the possession of open alcohol containers "in public" would leave those bent on boozing in the street free to do so in that area where much or most activity "in public" occurs, namely, on the sidewalk. We are not prepared to conclude that Congress and the Council intended to prohibit the disfavored activity "in public" but to exempt from the proscription the public area where most of that activity would take place. As Judge Learned Hand once put it, "statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945), quoted in *J. Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C.1989). That purpose or object would not be accomplished if we were to read "street" as excluding "sidewalk."

The interpretation of the statute which Alvarez asks us to adopt is contrary both to the natural import of its words and to the evident legislative purpose for its enactment. We hold that Section 25–128(a) applies to sidewalks as well as to roadways, and that the arresting officer had probable cause to believe that Alvarez was violating it.

### III

■ Citing *Taglavore v. United States*, 291 F.2d 262 (9th Cir.1961), Alvarez suggests on appeal that his arrest was pretextual, and that the government's evidence

---

**6.** In WEBSTER'S NEW INTERNATIONAL DICTIONARY 2332 (2d ed. 1948), however, "sidewalk" is defined as "a walk for foot passengers at the side of a street or road; a foot pavement." We decline to "make a fortress out of the dictionary," *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945), and prefer instead to leave it to the scholastically inclined reader to determine whether this definition is helpful to Alvarez or to the government.

was obtained as a result of an arrest for a minor and unrelated misdemeanor. Although his concern is understandable,[7] his claim must fail because he has failed to produce any evidence to support it.

So far as we can discern from the record, the claim of pretextuality was not made in the trial court, and we review only for plain error. Section 25–128(b) provides that any person violating the provisions of subsection (a) may be fined no more than $100, or imprisoned for not more than 90 days, or both. According to the uncontradicted evidence, Alvarez was committing in the officer's presence a misdemeanor for which he could serve time in jail. The statute, on its face, provides a legitimate basis for making the arrest, and there was no contrary testimony.

Alvarez has submitted no evidence to suggest that the arresting officer was acting pursuant to some improper ulterior motive. Although Alvarez was of Hispanic background and spoke little or no English, we cannot assume on that basis alone that the officer arrested him as a result of racial or ethnic animus. *See City of Lake Charles v. Henning*, 414 So.2d 331, 334–35 (La.1982). Moreover, if an arrest is objectively justifiable on the basis of probable cause, the officer's subjective motivation is generally deemed irrelevant. *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *Dunham v. District of Columbia*, 442 A.2d 121, 127 n. 8 (D.C.1982).

## IV

For the foregoing reasons, the judgment of conviction is hereby

*Affirmed.*[8]

---

**7.** As Professor Anthony Amsterdam has had occasion to observe:

> whether you and I get arrested and subjected to a full scale body search or are sent upon our respective ways with a pink multi-form and a disapproving cluck when we happen to go for a drive and leave our operator's licenses on the dressing table depends upon the state of the digestion of any officer who stops us—or, more likely, upon our obsequiousness, the price of our automobiles, and the formality of our dress, the shortness of our hair or the color of our skin.

A. Amsterdam, *Perspectives on the Fourth Amendment*, 58 MINN.L.REV. 349, 416 (1974). *See generally State v. Slatter*, 66 Ohio St.2d 452, 457, 423 N.E.2d 100, 104 (1981) (issuance of citation appropriate for violation of open container law, which is a "minor misdemeanor"; statute so providing "acts to preclude arrest and is a guarantee of personal freedom given by the legislature where no such right existed before").

Alvarez has not raised, and we do not decide, the question whether there was any constitutional or other infirmity, in light of the relatively trivial nature of the offense for which Alvarez was taken into custody, in the officer's decision to arrest him rather than to proceed by citation, and then to subject him to a full search. *See Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *cf. id.* at 266, 94 S.Ct. at 492 (Stewart J., concurring); *Hill v. United States*, 135 U.S.App.D.C. 233, 236, 418 F.2d 449, 452 (1968); *Watts v. United States*, 297 A.2d 790, 792 (D.C.1972); *State v. Hehman*, 90 Wash.2d 45, 578 P.2d 527 (1978) (*en banc*). We invite the attention of all concerned, however, to the eminently sensible observation of the Supreme Court of Washington in *Hehman*, 90 Wash.2d at 48, 578 P.2d at 529, that

> [i]t makes little sense to jail a man who, when he appears before the judge, will be clearly qualified for release without bail.
>
> \* \* \* \* \* \*
>
> Because municipal codes often permit custodial arrest for minor and even trivial offenses, the risk of pretext arrests is heightened.

(Citations omitted.)

**8.** Alvarez has not challenged the constitutionality of the "open container" statute, and we do not address that question. *Compare People v. Lee, supra* n. 4, in which a closely divided New York Court of Appeals held an "open container" ordinance which was similar to our statute unconstitutional, *with People v. Elhage*, 147 A.D.2d 911, 537 N.Y.S.2d 375 (4th Dept.1989), upholding the validity of a more refined ordinance, which required proof of intent to consume the alcohol in a public place. *See also State v. Van Dyne, supra* n. 8, sustaining the constitutionality of Ohio "open container" statute as applied to defendant who held a can of beer on a sidewalk a few feet from his home.