Chrishana S. DEROSIERS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 10–CT–57.

District of Columbia Court of Appeals.

Submitted Feb. 17, 2011.
Decided May 19, 2011.

Aaron E. Price, Sr. was on the brief for appellant.

Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Solicitor General, and Sonia I. Ignatova, Special Assistant Attorney General, were on the brief for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and FERREN, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

 Appellant Chrishana S. Derosiers appeals her conviction for possession of an open container of alcohol in a vehicle ("POCA–V") in violation of D.C.Code § 25–1001(a)(2) (2001). Appellant contends that her conviction rests on insufficient evidence because the government failed to prove beyond a reasonable doubt that the contents of the unmarked glass jar found in her possession met the statutory requirement for an "alcoholic beverage" under District law.[1] This case presents an opportunity for us to address the following question, in a published opinion, for the first time: whether, in the absence of a chemical test of the liquid in the glass jar that allegedly contained alcohol, the evidence was sufficient for conviction of POCA–V when based on (1) a police officer's observation and smell of the liquid;

(2) the officer's testimony that the smell of alcohol emanated from appellant, as well as from the car in which the jar was located; and (3) further testimony from the officer that appellant appeared to be intoxicated at the time the jar was found next to her in the car. We hold that the evidence in this case was sufficient to support the trial court's finding of POCA–V, and we affirm appellant's conviction.

I.

In December 2008, the government presented the following evidence at trial before Magistrate Judge Marisa J. Demeo.[2] On May 27, 2008, at approximately 2:30 a.m., Officers John Matula and Gregory Knee of the United States Park Police ("Park Police") were dispatched to investigate a red Honda automobile parked in the employee parking lot of the Tourmobile tour-bus company, which is located at 1000 Ohio Drive in southwest Washington. Upon arriving at the scene, the officers found two women who appeared to be asleep in the front seats of the vehicle. A glass jar containing a clear liquid was visible in the center console cup holder immediately next to appellant, who was seated in the driver's seat.

Waking appellant, Officer Matula observed that she was "groggy" and "very disoriented." Appellant's responses were "slurred" and somewhat "incoherent," her

---

1. In her brief, appellant perfunctorily states that "the government was required, but failed, to prove beyond a reasonable doubt *each of the elements* of possessing an open container of alcohol in a public place ...." (emphasis added). However, appellant does not explain how the government failed to prove any element of § 25–1001(a)(2), apart from the alcohol content requirement. The bare mention of a claim does not suffice to preserve it for our consideration. *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554

n. 9 (D.C.2001); *see also Lopez v. United States*, 863 A.2d 852, 854 n. 5 (D.C.2004). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Wagner, supra*, 768 A.2d at 554 n. 9 (internal quotation marks and citation omitted).

2. On May 10, 2010, Magistrate Judge Demeo was sworn in as Associate Judge of the Superior Court of the District of Columbia.

eyes were "bloodshot," and her breath smelled of alcohol. Furthermore, the smell of alcohol emanated from appellant's car. When Officer Matula asked appellant if she had been drinking, she admitted that she had "something to drink" at her cousin's house earlier in the day. After administering a series of field sobriety tests,[3] Officers Matula and Knee removed the glass jar from appellant's car. The officers smelled the liquid inside the jar and identified it as an alcoholic beverage, which Officer Matula knew to be vodka[4] by its distinct smell. Following what Officer Matula testified was standard procedure, the officers poured the liquid out of the jar and did not save any of it for testing. Officer Matula stated that, unlike standard procedure in narcotics investigations, he "[did not] know of anybody taking alcohol to have it tested." There was no further evidence of the jar's contents presented at trial.

On December 17,2008, Judge Demeo announced her findings. Judge Demeo credited the testimony of both officers, including the conclusion that the liquid inside the glass jar contained alcohol. She noted that "the smell of alcohol is something that a general lay person would be able to identify" and that police officers are specif-ically "trained to look for [ ] the smell of alcohol."[5] Subsequently, Judge Demeo found appellant guilty of one count of POCA–V.[6] On December 16, 2009, Superior Court Associate Judge John H. Bayly, Jr. affirmed appellant's conviction in a written order.

## II.

We review claims of insufficient evidence "in a light most favorable to the government, giving it the benefit of all reasonable inferences." *In re M.I.W.,* 667 A.2d 573, 575 (D.C.1995) (quoting *Patterson v. United States,* 479 A.2d 335, 337–38 (D.C.1984)). We defer to "the right of the trier of fact to assess credibility and to draw reasonable inferences from the evidence." *Cannon v. United States,* 838 A.2d 293, 296 (D.C.2003). Therefore, we will not reverse a bench trial conviction for insufficient evidence unless "appellant establishes that the trial court's factual findings were 'plainly wrong' or 'without evidence to support [them].'" *Id.* at 296–97 (quoting D.C.Code § 17–305(a) (2001)). In order to establish a claim of insufficient evidence, appellant must show that the government failed to provide "evidence from which a reasonable mind might fairly

---

3. Officer Matula testified that appellant had difficulty following his instructions in performing the field sobriety tests, and, therefore, appellant did not provide "optimal" results. However, based upon his interactions with appellant, as well as the results of the field sobriety tests, Officer Matula was "fairly certain that she was impaired" by alcohol.

4. In his order, Judge Bayly took judicial notice that a review of retail vodkas indicates an alcohol content of roughly 35% to 40%.

5. Judge Demeo's conclusion regarding police officer training in regards to detecting alcohol was extensively supported by the record in this case. Officer Matula testified that he received specialized training from the Park Police in traffic safety and field sobriety testing. He further testified that he had personally investigated "40 or so" persons for being under the influence. Officer Knee testified that he had received both standard field sobriety training, as well as more specialized breath test training, from the Park Police. He testified that he had personally investigated "60 to 70" alcohol-related traffic offenses during the course of his career as a police officer. In his order upholding Judge Demeo's judgment, Judge Bayly specifically cited Judge Demeo's reliance on Officer Matula's "experience with alcohol-related investigations."

6. However, Judge Demeo acquitted appellant of driving under the influence, and operating while impaired.

infer guilt beyond a reasonable doubt...." *M.I.W., supra,* 667 A.2d at 575 (quoting *Frendak v. United States,* 408 A.2d 364, 371 (D.C.1979)). Moreover, we "do not draw any distinction between direct and circumstantial evidence." *Cannon, supra,* 838 A.2d at 297.

■ D.C.Code § 25–1001(a) provides that "no person in the District shall drink an alcoholic beverage or possess in an open container an alcoholic beverage in ... [a] vehicle in or upon any street, alley, park, or parking area...." An alcoholic beverage is defined as one "containing alcohol capable of being consumed by a human being ... [not] less than one-half of 1% of alcohol by volume." D.C.Code § 25–101(5) (2007 Supp.). Therefore, in order to prove a POCA–V violation, the government must prove beyond a reasonable doubt that the beverage in question contains the statutorily proscribed concentration of alcohol. *See Reid v. District of Columbia,* 980 A.2d 1131, 1133–34 (D.C. 2009).

■ Appellant contends that the government's evidence was insufficient to establish the alcohol content of the liquid in the jar without a scientific test or analysis of the liquid. However, we have previously ruled in other contexts, such as cases involving drug-related offenses, that "the identity of a controlled substance may be proved by circumstantial evidence" taken from the testimony of someone experienced in identifying the substance. *Thompson v. United States,* 678 A.2d 24, 28 n. 7 (D.C.1996); *see also Duvall v. United States,* 975 A.2d 839, 844 (D.C. 2009) ("We recognize that in a prosecution for possession of a controlled substance, the government may establish that the substance is an illegal drug by means of circumstantial evidence."); *Bernard v. United States,* 575 A.2d 1191, 1195 n. 5 (D.C.1990) (stating that the court has "no quarrel" with relying on circumstantial evidence based upon expertise acquired through education or experience in identifying illegal substances). While we have accepted the use of circumstantial evidence in certain drug cases, we have also emphasized that we do not "countenance any attempt to prove guilt by speculative means. A lay person's impression, for example, is insufficient to establish the identity of a suspected drug." *Bernard, supra,* 575 A.2d at 1195. To withstand a sufficiency challenge, the circumstantial evidence must be compelling enough to persuade a reasonable fact-finder beyond a reasonable doubt that the substance in question was an illegal narcotic.[7] *See id.*

The evidentiary standard for proving alcohol content is not much, if at all, more stringent. Specifically, District of Columbia courts have accepted as proof the judgment of police officers who testified, based on their experience and good-faith sensory

---

7. In previous cases, we have found circumstantial evidence sufficient in establishing the identity of a controlled substance where the record demonstrates that the person identifying the substance expresses his or her opinion through expertise acquired through specific training or experience in identifying the substance. *See, e.g., Thompson, supra,* 678 A.2d at 28 (stating that the identification testimony of a habitual cocaine user was "additional circumstantial proof that appellant intended to distribute cocaine"); *Bernard, supra,* 575 A.2d at 1194–95 (holding that officer's testimony that appellant was observed selling substances from a brown paper bag, from which officers found marijuana following appellant's arrest, was sufficient to support appellant's conviction for distribution of marijuana); *Stagecrafters Club, Inc. v. District of Columbia,* 89 A.2d 876, 879 (D.C.1952) (holding that undercover officers' testimony that liquid purchased and tasted at unlicensed "bottle club" was whiskey was sufficient evidence of appellant selling alcohol without a license, because of officers' experience in tasting and smelling liquor).

observations, as to the identity of an allegedly alcoholic beverage. *Compare Stagecrafters Club, Inc. v. District of Columbia,* 89 A.2d 876, 879 (D.C.1952) ("Their knowledge, gained from experience, of the taste of whisky qualified the officers to testify that the liquid which they bought and tasted was in fact whisky or intoxicating liquor."), *with Reid, supra,* 980 A.2d at 1135–37 (holding that an officer's testimony that defendant's Kool–Aid drink contained alcohol, where the only evidence for drawing that conclusion was the result of an improperly and unreasonably used breath-test device, was not sufficient proof of an open container violation).[8]

Appellant argues that *Reid* controls the present case and requires the government to establish "actual proof" of the alcoholic concentration of an unidentified beverage by some sort of scientific, standardized testing. However, appellant misconstrues *Reid.* While appellant is correct that the court in *Reid* based its holding on the concern that the "unsuitable scientific testing" used could not accurately measure the alcoholic content of an unidentified beverage for the purpose of establishing an open container violation, *Reid* does not reject the sufficiency of sensory observations of experienced officers. Contrary to appellant's assertion, *Reid* did not discuss whether the arresting officer also "establish[ed] the alcohol concentration by smell."[9] As a result, *Reid* does not control here because it does not discuss other acceptable forms of proof, such as identifying alcohol by smell or taste.

Furthermore, to require scientific proof of alcoholic content in order to establish an open container violation directly contradicts the holding of *Stagecrafters Club.* In *Stagecrafters Club,* the court rejected the claim that chemical analysis was needed to prove that beverages sold to undercover police officers contained whiskey, holding instead that the officers' testimony that they recognized the taste of whiskey was sufficient. 89 A.2d at 879. While appellant seeks to limit the court's holding to the fact that the officers actually tasted the alleged alcoholic beverage, the court in *Stagecrafters Club* stated that it was the officers' unequivocal testimony of their *"knowledge, gained from experience,* of the taste of whisky" that served as sufficient proof of the alcoholic content of the unidentified drinks.[10] *Id.* (emphasis added). Here, as in *Stagecrafters Club,* Officer Matula unequivocally testified that he recognized, based on his experience, the distinctive smell of vodka emanating from the clear liquid inside the glass jar found next to appellant. In upholding appellant's conviction, Judge Bayly explicitly cited the rationale in *Stagecrafters Club.* Upon review of this record, we determine that

8. The government also cites our decision in *Alvarez v. United States,* 576 A.2d 713 (D.C. 1990), to support the proposition that the court will accept a police officer's conclusion, based on sensory observations, that an unidentified liquid was an alcoholic beverage. However, the court in *Alvarez* addressed only the issue of whether drinking an admittedly alcoholic beverage on a public sidewalk constituted a violation of the District's open container law. 576 A.2d at 714. Thus, the government's reliance on *Alvarez* is misplaced here.

9. There was evidence in *Reid* that the arresting officer "noticed that Reid had the odor of alcohol on his breath," but there was no evidence of the officer's sensory observations of the *beverage's* possible alcohol content. 980 A.2d at 1132 (internal quotation marks omitted).

10. As the government argues in its brief, a requirement that officers "taste [a] liquid to ascertain that it contains alcohol," which appellant contends *Stagecrafters Club* proposes, would expose officers unreasonably "to obvious and serious health risks." We decline to interpret *Stagecrafters Club* accordingly.

*Stagecrafters Club* controls, *Reid* is inapposite, and the trial court's factual findings are not plainly wrong or without evidentiary support. Officer Matula's experienced judgment that the clear liquid in the glass jar was an alcoholic beverage that he—based on his sense of smell—believed to be vodka, combined with the significant circumstantial evidence that appellant had been recently drinking, was reasonable and sufficient proof that the beverage contained the statutorily proscribed amount of alcohol for violation of POCA–V.

On this record, sufficient evidence existed with which a fact-finder could conclude beyond a reasonable doubt that appellant was guilty of violating D.C.Code § 25–1001(a)(2), and her conviction therefore is upheld. Accordingly, we affirm.

*So ordered.*