*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-323

EARL WORKMAN, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-11703-12)

(Hon. Harold Cushenberry, Jr., Trial Judge)

(Submitted February 13, 2014                    Decided July 31, 2014)

*Montrell L. Scaife* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *Christopher Macchiaroli*, and *L. Jackson Thomas II*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BECKWITH, *Associate Judges*, and FERREN, *Senior Judge*.

BECKWITH, *Associate Judge*:  After a two-day bench trial, Superior Court Judge Harold Cushenberry found appellant Earl Workman guilty of several charges stemming from a traffic stop during which police pulled Mr. Workman over for talking on his mobile phone in apparent violation of the Distracted Driving

Safety Act[1] and matters escalated from there. Mr. Workman argues on appeal that the government failed to present constitutionally sufficient evidence to support one of his three convictions—that for possession of an open container of alcohol (POCA).[2] Specifically, he contends that evidence that police observed an open container bearing a tequila label in the back seat of his car was insufficient to demonstrate beyond a reasonable doubt that the bottle contained at least one half of one percent alcohol by volume, as required under the POCA statute's definition of an "alcoholic beverage." We agree, and reverse Mr. Workman's POCA conviction. We affirm his remaining convictions for assault on a police officer[3] and failure to obey a lawful order.[4]

## I.

Earl Workman was driving home from work when a police cruiser pulled him over after its three occupants, Metropolitan Police Department officers Bryan Cox, Jason Romlein, and James Chastanet, observed him using a mobile phone while he was driving. Officer Cox, the driver of the police car, approached the

---

[1] D.C. Code § 50-1731.04 (2012 Repl.).

[2] D.C. Code § 25-1001 (a)(2) (2012 Repl.).

[3] D.C. Code § 22-405 (b) (2012 Repl.).

[4] 50 DCMR § 2000.2 (2012).

driver's side of Mr. Workman's car while Officer Chastanet approached the passenger's side. After Mr. Workman provided his driver's license and registration to Officer Cox, Officer Chastanet noticed "a glass bottle" that "appeared to be a tequila bottle" behind the driver's seat. Officer Romlein testified that he saw the tequila bottle too, and that "[w]hen [he] first saw it, it was standing up and you could clearly see that it was partially empty."[5] Officer Chastanet communicated to his fellow officers, using a predetermined hand signal, that Officer Cox should have Mr. Workman step out of the vehicle. According to the officers' testimony, Mr. Workman refused to do so and the officers ultimately had to use force to make him comply.

After Mr. Workman was removed from his car and handcuffed, police searched the vehicle for "[a]dditional contraband that would have coincided with the open container of alcohol," such as "cups, flasks, other open containers of alcohol," but found nothing besides the bottle with the tequila label that Officer Chastanet had observed. Officer Cox testified that he saw the bottle but that he

---

[5] The photograph taken of the bottle during the search depicts it lying among various objects on the floor of the back seat, and Officer Romlein testified that "in the photograph, it's seen laying [sic] on its side." He could not recall, however, "if it was on the rear floorboard or on the seat" when he first saw it. Office Chastanet testified that it was "on the seat" as opposed to the floorboard and that it was "behind the driver's seat on the left side of the passenger seat standing up."

"didn't examine it" and "didn't pick it up and look at it." The bottle was not taken into evidence, and at trial the government admitted photographs of the bottle on the floor of the car's back seat. The label on the bottle indicated that the tequila was "(80 proof) 40% alcohol by volume."

The trial court denied Mr. Workman's motion for judgment of acquittal on the POCA count, though it noted that "there certainly could be an argument that you might put something other than tequila in a tequila bottle, and sometimes I do have in connection with these type of offenses the smell of alcohol on the breath, or something like that." At the trial's conclusion, the court found Mr. Workman guilty of the POCA count, stating that the photographs introduced at trial were "compelling evidence beyond a reasonable doubt that [Mr. Workman] was in possession, constructively, of an open container of alcohol." The court again stated that "there's a possibility that a person could put water in a tequila bottle," but concluded that "that would simply be speculation. And there's nothing that would support that at all, other than speculation." Mr. Workman appeals his conviction on the alcohol possession count.

## II.

The Due Process Clause of the U.S. Constitution prohibits a criminal conviction unless the government establishes guilt of the essential elements of an

offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361-62 (1970). This standard of proof beyond a reasonable doubt "is not merely a guideline for the trier of fact" but "also furnishes a standard for judicial review of the sufficiency of the evidence." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc). When addressing a challenge to the sufficiency of the government's evidence of an offense, we consider the evidence in the light most favorable to the government in determining whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316-20 (1979); *Speight v. United States*, 671 A.2d 442, 454 (D.C. 1996). "Slight evidence is not sufficient evidence," and "[t]he requirement of proof beyond a reasonable doubt 'means more than that there must be some relevant evidence in the record in support of each essential element of the charged offense.'" *Swinton v. United States*, 902 A.2d 772, 776 n.6 (D.C. 2006) (quoting *Rivas*, 783 A.2d at 134).

To establish Mr. Workman's guilt of the POCA charge, the government had to prove that he "possessed in an open container an alcoholic beverage" in "[a] vehicle in or upon any street, alley, park, or parking area." D.C. Code § 25-1001 (a)(2). The D.C. Code defines "alcoholic beverage" as "a liquid or solid, patented or not, containing alcohol capable of being consumed by a human being." D.C. Code § 25-101 (5) (2012 Repl.). "The term 'alcoholic beverage' shall not include

a liquid or solid containing less than one-half of 1% of alcohol by volume." *Id.*; *see also Derosiers v. District of Columbia*, 19 A.3d 796, 799 (D.C. 2011).[6]

Mr. Workman argues that the evidence introduced at trial was insufficient to prove that he was in possession of an open container of alcohol because the government "failed to provide any credible evidence that the bottle contained alcohol." The government counters that the bottle's label was sufficient circumstantial evidence to satisfy the statutory requirement, citing to various statutes and regulations imposing labeling requirements for alcoholic beverages in support of its view that "[l]abels are reliable indications of content, particularly in a business as well regulated as the liquor industry."

We agree with Mr. Workman that in the circumstances of this case, the tequila label alone was insufficient evidence to sustain Mr. Workman's POCA conviction. Although the bottle's label indicated an alcohol content of 40 percent,

---

[6] An earlier version of the POCA statute did not expressly define "open container," and in *Mitchell v. United States*, a 2000 case interpreting that statute, we held that "[m]ere possession in a car of a *closed* bottle containing an alcoholic beverage does not, without more, furnish probable cause even where . . . the bottle is only three-quarters full (indicating that it had been open at some prior time)." 746 A.2d 877, 886 (D.C. 2000) (emphasis in original). The statute was amended in 1998, and it now defines "open container" as "a bottle, can, or other container that is open or from which the top, cap, cork, seal, or tab seal has at some time been removed." D.C. Code § 25-101 (35). In *Bean v. United States*, 17 A.3d 635, 637 (D.C. 2011), we held that "the 1998 amendment rendered the *Mitchell* case inapposite."

the record is devoid of other evidence that the liquid found in the open container was, in fact, the tequila indicated on the label or any other kind of liquor. None of the officers testified that the substance in the tequila bottle smelled or tasted like alcohol. Police did not seize the bottle, and there was no evidence that any officer opened or inspected it. The officers found no cups, flasks, or other alcohol in the car, and there was no evidence that Mr. Workman had been drinking or appeared intoxicated.

The government correctly points out that the alcohol-content element can be proved by circumstantial evidence, including "the judgment of police officers who testified, based on their experience and good-faith sensory observations, as to the identity of an allegedly alcoholic beverage." *Derosiers*, 19 A.3d at 799-800. We have accordingly held that an officer's "knowledge, gained from experience, of the taste of whisky" was sufficient to prove that a beverage contained whisky. *Stagecrafters Club v. District of Columbia*, 89 A.2d 876, 879 (D.C. 1952). And we have upheld a POCA conviction based on an officer's "sense of smell . . . combined with the significant circumstantial evidence that appellant had been recently drinking." *Derosiers*, 19 A.3d at 801.

An experienced officer's testimony that a beverage smelled or tasted like alcohol is far more probative of what was actually in the bottle at the time police

witnessed the alleged offense than a label, which, although solid proof of what was in the container when it was bottled and sold, reveals much less about what the bottle contained after it was opened and found its way to a heap of personal items in the back seat of a car. *See, e.g.*, *B.B. v. State*, 117 So. 3d 442, 444 (Fla. Dist. Ct. App. 2013) (deeming a label to be insufficient to prove alcohol content).[7] While the government can prove that a beverage is alcoholic without chemical analysis, *see, e.g.*, *Derosiers*, 19 A.3d at 797-801, we have considered proof of alcohol content that was speculative or overly imprecise to be insufficient to sustain a POCA conviction. *See, e.g.*, *Reid v. District of Columbia*, 980 A.2d 1131, 1133-36 (D.C. 2009) (holding that the result of a breath-test device that was held over an open container of liquid in an effort to measure alcohol content was not sufficient to convict appellant of POCA). The tequila label is some evidence that the liquid in the bottle contained alcohol, and the officers' observation of the label on the open container would give them probable cause to arrest. *See Bean v. United*

---

[7] The Florida court stated in *B.B.* that the government's case "lacked any evidence identifying the substance inside the can" besides a label indicating a brand of alcoholic beverage. As in the present case, the police in *B.B.* did not "smell, test, or otherwise examine the liquid in the can to determine whether the beverage was alcohol" and did not preserve the can or its contents for purposes of trial. 117 So. 3d at 444. "Even if this court accepted that Four Loco is a common brand of alcoholic beverage, the can was open when discovered by the deputy; thus, the label of the can cannot conclusively establish that the can contained alcohol." *Id.* The court therefore concluded that "the State presented insufficient evidence to prove that B.B. possessed alcohol." *Id.*

*States*, 17 A.3d 635, 637 (D.C. 2011). But it falls short of proof beyond a reasonable doubt that what was actually in the bottle when police found it half full of a clear liquid in the back seat of Mr. Workman's vehicle was tequila. *See Reid*, 980 A.2d at 1136 (noting the uncertainty about a breath test device's ability to measure "residual alcohol vapors in a cup—as might have occurred, for example, had Reid finished a strong alcoholic drink and refilled his cup with 'just Kool-Aid' before going outside").

The government argues that *Bernard v. United States*, 575 A.2d 1191 (D.C. 1990), in which we affirmed the appellant's drug possession convictions based on circumstantial evidence that the contraband he sold was in fact marijuana, compels affirmance of Mr. Workman's POCA conviction. In that case, the appellant was observed selling plastic packets out of a brown paper bag. *Id.* at 1192. Although the packets he sold were not tested, police seized the brown paper bag and the remaining packets were found, after chemical analysis, to contain usable amounts of marijuana. *Id*. at 1194. We explained that

> [i]f Bernard was making street sales of material which came from a bag containing marijuana and which had been packaged for sale, then it was most improbable that the items being sold were of a different character from those which remained in the bag. Although it is theoretically possible that Bernard's sales were of something other than marijuana, that possibility appears remote indeed.

*Id.*

Here, unlike in *Bernard*, no additional circumstantial evidence corroborated the officers' hunch that the bottle contained tequila, and the possibility that the bottle contained something besides alcohol is far less remote than in *Bernard*. Although a factfinder need not rule out every reasonable hypothesis consistent with innocence in order to convict, "[o]n the skimpy record before us, we conclude that a reasonable trier of fact could not find beyond a reasonable doubt" that the liquid in the bottle "was more than .5% alcohol by volume." *Reid*, 980 A.2d at 1136-37.

We reverse Mr. Workman's POCA conviction and affirm the Superior Court's judgment in all other respects.[8]

---

[8] Mr. Workman also claims that the police lacked probable cause to conduct the traffic stop on July 5, 2012, and that the trial court erred in concluding otherwise. To initiate a valid stop, however, the officers needed only a reasonable, articulable suspicion that Mr. Workman was violating the hands-free statute. *See Milline v. United States*, 856 A.2d 616, 619 (D.C. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The trial court credited the testimony of the officers who witnessed Mr. Workman holding his phone close to his face and found Mr. Workman's testimony "less credible because . . . he has more to lose in this case." What the officers saw—"the defendant having a cell phone in his hand [when] it was clear [that] he wasn't using a hands free device"—supported a reasonable suspicion that Mr. Workman's phone use was in violation of the hands-free statute. *See Pleasant-Bey v. United States*, 988 A.2d 496, 500 (D.C. 2010) ("'[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct'") (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). The trial court did not err in denying Mr. Workman's motion to suppress.

*So ordered.*