*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-95

JAMES ALLEN CAMPBELL, APPELLANT,

FILED 07/20/201
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-10147-14)

(Hon. Milton C. Lee, Trial Judge)

(Submitted February 11, 2016                    Decided July 20, 2017)

*Vincent A. Jankoski* was on the brief for appellant.

*Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the briefs were filed, with whom *Elizabeth Trosman*, *Elizabeth H. Danello*, *Laura Crane*, *Lindsey Merikas*, and *Kristina L. Ament*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and BELSON, *Senior Judge*.

BECKWITH, *Associate Judge*:    Appellant James Campbell challenges the

sufficiency of the government's evidence that he violated the District of

Columbia's open-container law when he was found sleeping in a parked vehicle on a grassy median between two church parking lots with a half-empty bottle of vodka in close reach. Mr. Campbell contends that the evidence was insufficient to establish that he possessed an open container of alcohol (POCA) in "[a] vehicle in or upon any street, alley, park, or parking area," D.C. Code § 25-1001 (a)(2) (2012 Repl.),[1] because the meaning of "parking area" did not encompass the location in which he was arrested. We agree that Mr. Campbell's vehicle was not in a "parking area" within the meaning of the statute and reverse his conviction for POCA.

As Mr. Campbell has waived his argument—based on the same statutory issue underlying his sufficiency claim—that the trial court should have suppressed the fruits of the search incident to his unlawful arrest for POCA, we affirm his convictions for first-degree theft and unauthorized use of a vehicle. With respect to Mr. Campbell's conviction for receiving stolen property, the government has filed in this court a consent motion seeking to vacate that conviction, and we now grant that motion.

---

[1] All subsequent D.C. Code citations are to the 2012 Replacement volume.

**I.**

According to the government's evidence at trial, at around 3 a.m. on June 9, 2014, Metropolitan Police Department Officer George Poor came across a black Infiniti sedan parked on an unmarked grassy median between two parking lots just south of Mount Carmel Baptist Church at Third and I Streets, Northwest. Officer Poor testified that the vehicle was not running, its lights were off, and a towel was draped in place of a missing right rear window. Because the area was known for prostitution and because the vehicle's missing window and its location on the grass between two parking lots struck him as "odd" and "unusual," Officer Poor proceeded to investigate.

Officer Poor testified that he pulled his cruiser behind the Infiniti, turned on his emergency lights, and approached the vehicle on foot with a flashlight. From outside the driver's door, Officer Poor saw a man—whom he identified at trial as Mr. Campbell—reclined in the driver's seat, semiconscious or unconscious, and a half-empty bottle of Absolut vodka in the vehicle's center console. The officer rapped on the driver's window several times, roused Mr. Campbell, and had him step out of the vehicle. According to Officer Poor, when he asked Mr. Campbell whether he had been drinking, Mr. Campbell responded that he had had "a couple of sips." Officer Poor testified that he also recovered a screwdriver that was

wedged between the driver's seat and the center console, but the car's ignition was intact.

Officer Poor placed Mr. Campbell under arrest for possessing an open container of alcohol in a vehicle. In a search incident to that arrest, Officer Poor found two watches and the key to the Infiniti in Mr. Campbell's pocket and also found paperwork in the vehicle indicating that Mr. Campbell was not the car's owner. Another search of Mr. Campbell after he was taken to the First District police station uncovered four shards of glass in his pocket that, according to another officer's testimony, appeared to match the broken glass found inside the vehicle. Jose Zavala, the actual owner of the Infiniti—who was contacted by police and then came to the church—informed Officer Poor that the Infiniti was his car, that it had been stolen earlier that evening, and that the two watches also belonged to him. Mr. Zavala testified that he did not keep any alcohol or a screwdriver in the Infiniti.

At the close of the government's case, the trial court denied Mr. Campbell's suppression motion, which the parties had agreed would be resolved on the basis of the testimony at trial, and also denied his motion for judgment of acquittal. The jury began its deliberations on the afternoon of November 4, 2014, and on the following afternoon delivered its verdicts acquitting Mr. Campbell of destruction

of property (as to the vehicle) and second-degree theft and receiving stolen property (as to the watches), but convicting him of first-degree theft and receiving stolen property (as to the vehicle), unauthorized use of a vehicle, and POCA.

## II.

On appeal, Mr. Campbell challenges (among other things[2]) the sufficiency of the evidence supporting his conviction for possessing an open container of alcohol. He contends, in particular, that his conduct does not fall within the POCA statute's prohibition on possession of an open container of alcohol in "[a] vehicle in or upon any street, alley, park, or parking area," D.C. Code § 25-1001 (a)(2), because the POCA statute does not, in his view, prohibit possession of an open container of alcohol on private property and because the only evidence on the subject at trial indicated that the area between two church parking lots where he was found and arrested was private land. The government counters that Mr. Campbell did not preserve the sufficiency challenge to his POCA conviction that he presses now on appeal and that in any event, "the POCA statute extended to the place where the car was stopped, because it was a 'parking area,' as that term

---

[2] *See infra* note 13 (discussing Mr. Campbell's challenge to the trial court's denial of the suppression motion).

ordinarily is defined."

## A. Preservation of the Sufficiency Challenge

The government argues, as a threshold matter, that Mr. Campbell neglected to preserve his appellate challenge to the sufficiency of the evidence by failing to argue, in support of his motion for judgment of acquittal (MJOA), "that the location in which he was found in the vehicle with the bottle could defeat the POCA charge." As the government points out in its brief, Mr. Campbell's MJOA argument as to the POCA charge focused solely on Mr. Campbell's constructive possession of the container of alcohol, and when the trial court denied the motion it stated specifically that the evidence permitted a reasonable inference that the vodka bottle was open and that Mr. Campbell possessed it.

It is settled law in the District of Columbia that in a jury trial, "a general motion for acquittal . . . is deemed 'sufficient to preserve the full range of challenges' to the sufficiency of the evidence." *Newby v. United States*, 797 A.2d 1233, 1238 (D.C. 2002) (quoting *United States v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir. 1995)); *see also Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1264 (D.C. 1991) (stating that the grounds for an MJOA "need not be stated with specificity unless the prosecutor so requests"). What is somewhat less settled is

what sort of review this court applies where instead of a general MJOA, a defendant presents a specific argument in support of an MJOA in the trial court but raises a different challenge to the sufficiency of the evidence on appeal. While it is not clear why, if a general MJOA is sufficient to preserve all arguments challenging the sufficiency of the evidence, the addition of specific arguments in support of the motion should operate to un-preserve other arguments, *cf. Newby*, 797 A.2d at 1238 & n.2 (describing as "decidedly murky" "the reason for treating jury trials differently from bench trials in this respect," where in a bench trial, a mere plea of not guilty automatically preserves all sufficiency challenges), many courts, including most federal courts, have held that if a defendant specifies the grounds for an MJOA, "he may not later contend that there were other areas upon which his motion for judgment of acquittal would lie." *E.g.*, *State v. Kreps*, 661 P.2d 711, 714 n.1 (Haw. Ct. App. 1983); *see also United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998).[3] And although this court has explicitly left the

---

[3] Appellate courts in many other jurisdictions review sufficiency-of-the-evidence challenges de novo even in the absence of a motion for judgment of acquittal. *See Shafer v. State*, 456 P.2d 466, 467–68 (Alaska 1969); *State v. Otto*, 717 A.2d 775, 784 (Conn. App. Ct. 1998); *Mack v. State*, 554 S.E.2d 542, 545 (Ga. Ct. App. 2001); *State v. Faught*, 908 P.2d 566, 570–71 (Idaho 1995); *Brantley v. State*, 71 N.E.3d 397, 401 (Ind. Ct. App. 2017); *State v. Moore*, 215 So. 3d 951, 960 n.14 (La. Ct. App. 2017); *People v. Cain*, 605 N.W.2d 28, 41 (Mich. Ct. App. 1999) ("Criminal defendants do not need to take any special steps to preserve a

(continued…)

question open, *see Abdulshakur*, 589 A.2d at 1264; *Porter v. United States*, 826 A.2d 398, 404 n.6 (D.C. 2003), we also held in one case that an appellant did not preserve his venue claim when he moved for judgment of acquittal on specific grounds without contesting venue. *See Davis v. United States*, 367 A.2d 1254, 1268–69 (D.C. 1976).

In this case, we need not resolve the question whether this rule of forfeiture extends beyond the context of a challenge to venue. Preserved or not, Mr. Campbell's sufficiency claim—like the sufficiency claim in (*Ronald*) *Wynn v. United States* that "turn[ed] on a question of law and statutory construction" and that we reviewed de novo "in order to avoid affirming a conviction for conduct that

_____

(…continued)
challenge to the sufficiency of the evidence."); *State v. Skinner*, 163 P.3d 399, 402 (Mont. 2007) ("[A] defendant does not have to raise a sufficiency of the evidence objection in district court to preserve the issue for review."); *State v. Seberger*, 815 N.W.2d 910, 916–17 (Neb. 2012); *Chism v. State*, 954 P.2d 1183, 1184 (Nev. 1998); *State v. Lard*, 519 P.2d 307, 309 (N.M. Ct. App. 1974); *State v. Cooper*, 867 N.E.2d 493, 498 (Ohio Ct. App. 2007); *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001); *State v. Hayes*, 681 N.W.2d 203, 214 (Wis. 2004) ("A challenge to the sufficiency of evidence is different from other types of challenge not previously raised during trial. This difference justifies allowing a challenge to the sufficiency of the evidence to be raised on appeal as a matter of right despite the fact that the challenge was not raised in the circuit court."). The Colorado Supreme Court has not addressed the issue, and the Colorado intermediate appellate courts have split on whether to review sufficiency claims de novo, see *People v. Serra*, 361 P.3d 1122, 1129 (Colo. App. Div. I 2015), or for plain error, see *People v. Lacallo*, 338 P.3d 442, 445–46 (Colo. App. Div. IV 2014).

was not a crime," 80 A.3d 211, 216–17 (D.C. 2013)—is the type of claim we have consistently afforded de novo review. *Id.; see also* (*Cotey*) *Wynn v. United States*, 48 A.3d 181, 187–88 (D.C. 2012) (conducting de novo review of a sufficiency claim where "[a]t bottom, we are called upon to determine the reach of the statute which prohibits obstruction of justice"); *Jeffrey v. United States*, 892 A.2d 1122, 1128 (D.C. 2006) (applying de novo review to an unpreserved sufficiency claim "[d]ue to the importance of the statutory interpretation issue").[4] We therefore turn to the question whether D.C. Code § 25-1001, correctly interpreted, criminalized the conduct that the government proved Mr. Campbell engaged in. *See* (*Cotey*) *Wynn*, 48 A.3d at 188 ("We review issues of statutory construction *de novo*.").

---

[4] In other such cases, we have declined to say what standard of review applied after concluding that a successful sufficiency claim based on a question of statutory interpretation would necessarily meet the threshold for reversal under plain error review. *See Ruffin v. United States*, 76 A.3d 845, 852 (D.C. 2013) (noting that "we would reach the same outcome under either plain error or *de novo* review because '[i]t would be both an obvious error and a miscarriage of justice for a defendant to stand convicted of an offense which the law does not make a crime.'" (quoting *Mitchell v. District of Columbia*, 741 A.2d 1049, 1052–53 (D.C. 1999) (alteration in original))); *Mitchell*, 741 A.2d at 1052 ("Essentially, Mitchell argues that his conviction is based on conduct which the statute does not make a crime . . . . If Mitchell can make this showing, he can meet the plain error standard for reversal."); *Moten v. United States*, 81 A.3d 1274, 1275 n.1 (D.C. 2013); *see also United States v. Olano*, 507 U.S. 725, 736 (1993) ("The court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant . . . .").

### B. The Meaning of "Parking Area" Under D.C. Code § 25-1001 (a)(2)

Section 25-1001 of the D.C. Code makes it unlawful to "possess in an open container an alcoholic beverage in . . . [a] vehicle in or upon any street, alley, park, or parking area." D.C. Code § 25-1001 (a), (a)(2). The evidence at trial showed that Mr. Campbell possessed an alcoholic beverage in an open container in a vehicle "parked on top of the grass median in between [two] parking lots" in an area not intended for vehicles. Mr. Campbell argues that he was not in a "parking area" for purposes of the statute, and that the statute does not reach conduct on private property. The government argues that in common usage "parking area" means any area in which vehicles park.[5]

In determining whether Mr. Campbell and his vehicle were in a "parking area" within the meaning of the statute, we begin with "the language of the statute

---

[5] The government points us to a free online dictionary that defines "parking area" as "a lot where cars are parked." *Parking area*, Webster's Online Dictionary, http://www.webster-dictionary.org/definition/parking%20area (last visited May 26, 2017). "Webster's" is a generic trademark and not necessarily an indicator of a reputable reference source. *See* John Gladstone Mills et al., 1 *Patent Law Fundamentals* § 5:74 (2d ed.) ("Long ago 'Webster's' was held generic for any English language dictionary."). Merriam-Webster, by contrast, does not have an entry for "parking area." Merriam-Webster Online, https://www.merriam-webster.com (last visited May 26, 2017).

itself," which is ordinarily conclusive in the absence of "a clearly expressed legislative intention to the contrary."[6]  *W. End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 726 (D.C. 1994) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "[I]f a word that should be defined in a statute is not, then its commonly accepted meaning is applied." *Id.* at 727 (quoting 2A Singer, *Sutherland Statutory Construction* § 47.07 (5th ed. 1992)). When a statute supplies a definition of a term, however, "definition by the average man or even by the ordinary dictionary . . . is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others." *Fox v. Standard Oil Co. of N.J.*, 294 U.S. 87, 96 (1935); *cf. Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (en banc).

---

[6]  While this court has affirmed a conviction for POCA under § 25-1001 (a)(2) where the vehicle in which the appellant possessed the open container was parked in a parking lot, *see, e.g.*, *Derosiers v. District of Columbia*, 19 A.3d 796, 797 (D.C. 2011), the appellant there challenged only the sufficiency of the evidence that the liquid in the container constituted "an alcoholic beverage" under District law. *See id.* at 797 n.1 (deeming any other evidentiary sufficiency claims to be waived because "appellant does not explain how the government failed to prove any element of § 25-1001 (a)(2), apart from the alcohol content requirement"). "That we have affirmed a conviction under a particular statute in the past does not foreclose subsequent parties from bringing legal challenges that could have been, but were not, raised in an earlier case." *In re Q.B.*, 116 A.3d 450, 455 (D.C. 2015).

Although "parking area" is not specifically defined in Title 25 of the D.C. Code, the definitions section of that title does define the word "parking" as "that area of public space which lies between the property line and the edge of the actual or planned sidewalk which is nearer to such property line, as such property line and sidewalk are shown on the records of the District." D.C. Code § 25-101 (36); *see also Bolz v. District of Columbia*, 149 A.3d 1130, 1138 n.18 (D.C. 2016) (discussing the term "parking"); "Parking," *Black's Law Dictionary* (Rev. 4th ed. 1968). This meaning of "parking" is thus entirely distinct from a vehicle parking lot. This definition was enacted in the Opened Alcoholic Beverage Containers Amendment Act of 1998, D.C. Law 12-206 (March 1999), which also amended the section now codified at § 25-1001 (at the time codified at § 25-128).[7] Prior to the

---

[7] A document included in the Act's legislative history purports to explain the history of "parking" in the District. *See* D.C. Council, Report on Bill 12-612 (July 6, 1998), Attachment C. According to a memorandum submitted by a citizen named Franklin E. Kameny, when Washington was founded the government acquired wide rights of way in order to build the broad streets envisioned in Pierre L'Enfant's plan. After the Civil War, when the need arose to pave the streets, the cost of laying all that pavement proved to be prohibitive, so the government decided to pave only the central portion of the roadway and leave the excess on either side to be "parked and otherwise beautified," in the words of an 1872 report, by the abutting property owners. This area, known as the "parking," has come to be used for lawns, driveways, gardens, and even structural extensions of private houses such as bay windows and porches, but the government retains ownership. According to Mr. Kameny, in a "highly informal discussion on this matter" in the late 1990s, then-Corporation Counsel John Ferren summarized the notion this way:

(continued…)

Act, that section prohibited possession of an open alcoholic beverage "in any street, alley, park or *parking*" (emphasis added), and the Act maintained that wording. As of 1999, therefore, the statute clearly prohibited possession of an open container of alcohol in a "parking" (as defined in § 25-101 (36)) but not in a vehicle parking lot.

Two years later, in a large reconfiguration of the District's alcohol control scheme focusing primarily on changes to the Alcoholic Beverage Control Board and permitting, "parking" was changed to "parking area" in the two instances in which the word appeared in § 25-1001 (a). *See* Title 25, D.C. Code Enactment and Related Amendments Act of 2000, D.C. Law 13-298, 48 D.C. Reg. 2959 (May 2001). These changes were present in the bill as introduced and were apparently enacted without discussion. *See* D.C. Council, Report on Bill 13-449 (Nov. 20, 2000); Reform to the District's Alcoholic Beverage Control Laws and Regulations: Hearing Before the Committee on Consumer & Regulatory Affairs (Nov. 9, 1999).

Given the absence of evidence to the contrary, there are good reasons—including textual reasons—to conclude that the statute's meaning did not change

---

(…continued)
"We own it; you mow it."

when the Council changed "parking" to "parking area." Elsewhere in the D.C. Code, for example, the Council has used "parking" and "parking area" to mean the same thing. In the Urban Forest Preservation Act of 2003, "public parking" is defined to mean "that area of public space devoted to open space, greenery, parks, or parking that lies between the property line . . . and the edge of the actual or planned sidewalk that is nearer to the property line . . . ." D.C. Law 14-309, § 102 (4), 50 D.C. Reg. 888 (June 2003) (codified at D.C. Code § 8-651.02 (4)). Yet when the term "public parking" is actually used in that act, it is in the phrase "public parking area." D.C. Law 14-309, § 106 (b) ("No property owner shall permit a tree or tree part, dead or alive, to stand on his or her property, including the *public parking area* associated with that property if it is a hazard to the public at-large, or endangers any public improvement or other public facility.") (emphasis added) (codified at D.C. Code § 8-651.06 (b)). This statute indicates that at least in this instance the Council uses "parking" and "parking area" interchangeably.

In addition, if the meaning of "parking" changed when it was made "parking area" in § 25-1001 (a)(1) and (a)(2), that new meaning would render subsection (b) inoperative. Subsection (b) exempts from prohibition "drinking or possession of an alcoholic beverage . . . [i]n or on a structure which projects upon the parking, and which is an integral, structural part, of a private residence, such as a front

porch, terrace, bay window, or vault . . . ."[8] This was the one instance of "parking" not changed to "parking area" by the 2001 amendment. If "parking area" has a meaning different from that of "parking," then subsection (b) would be exempting from prohibition a behavior that subsection (a) no longer makes explicitly unlawful.[9]

If there remains any ambiguity in the meaning of "parking area" in § 25-1001, it must be strictly construed. *See Alvarez v. United States*, 576 A.2d 713, 714–15 (D.C. 1990). Although the rule of lenity does not "require courts to give criminal statutes their narrowest possible interpretation," *id.* (citing *Lemon v.*

---

[8] Subsection (b) was added in the Opened Alcoholic Beverage Containers Amendment Act of 1998, the same statute that enacted the definition of "parking." This change was a response to public pressure in the wake of what became known as the "Chardonnay Lady Case": the arrest of a woman drinking a glass of wine on her front porch, which was within the parking and therefore technically on public property. *See* D.C. Council, Report on Bill 12-612 (July 6, 1998).

[9] "Parking" is an awkward word, and the substitution of "parking area" for "parking" in § 25-1001 (a) may merely reflect an attempt on the part of the Council to improve readability—something the Council seemed to be doing elsewhere in the statute. For example, it is difficult to detect any difference in meaning where the Council changed the language of "no person in the District of Columbia shall drink or possess, in an opened container, any alcoholic beverage in any of the following places," Opened Alcoholic Beverage Containers Amendment Act § 2 (b), to "no person in the District shall drink an alcoholic beverage or possess in an open container an alcoholic beverage in or upon any of the following places," Title 25, D.C. Code Enactment and Related Amendments Act § 101.

*United States*, 564 A.2d 1368, 1381 (D.C. 1989)), it supports a reading of "parking area" that relates to the long-established term "parking," as defined in the same title, rather than the term "parking lot," which the Council has used in other statutes when it meant to criminalize conduct in vehicle parking sites.[10] *See, e.g.*, D.C. Code § 38-826.05 (a) ("Tobacco and tobacco products are prohibited in public school and public charter school buildings, grounds, parking lots, parking garages . . . ."); D.C. Code § 7-2509.07 (a), (a)(2) ("No person holding a license shall carry a pistol in the following locations[:] . . . The building and grounds, including any adjacent parking lot, of [a childcare facility or school.]").

The government does not contend that Mr. Campbell's vehicle was located in a "parking" within the meaning of § 25-101 (36), and there is no suggestion in the record that it was. Instead the government argues that "the jury reasonably could find that the area was not privately owned."[11] Even if this were so, Mr.

---

[10] Notwithstanding the government's assertion in its opening statement at trial that the vehicle was "parked on some grass, not in a parking lot, but on grass," our analysis assumes without deciding that Mr. Campbell was in a vehicle parking lot as the government argues on appeal.

[11] Although the Superior Court referred to the location as "quasi public because people use the parking lot all the time . . . for church related activities," the trial court appears to have accepted that Mr. Campbell was on church property, which is not public property. Furthermore, the only evidence we have bearing on the ownership of the lot is from Officer Poor's testimony, which indicates that the

(continued…)

Campbell's presence on public property would not be sufficient to place him within the reach of the statute.  While § 25-1001 seeks to curtail public possession of open containers of alcohol, *see Alvarez*, 576 A.2d at 716, it does so through prohibition of possession in enumerated places.  D.C. Code § 25-1001 (a) ("[N]o person in the District shall drink an alcoholic beverage or possess in an open container an alcoholic beverage in or upon any of the following places . . . .").  Where the Council has meant to prohibit an act in any public place it has done so.  *See, e.g.*, D.C. Code § 22-1312 ("It is unlawful for a person, in public, to make an obscene or indecent exposure of [private areas of the body].").

As Mr. Campbell was not located in a "parking area" within the meaning of § 25-1001 (a)(2), his possession of an open container of alcohol was not unlawful under that statute.[12]

_____

(…continued)
officer encountered the car on private property:

> Q. Okay.  Now this is the Mount Carmel Baptist Church?
> A. Yes.
> Q. Okay.  And this is private property, correct?
> A. Yes.

[12]  The government suggests in a footnote that the area in which Mr. Campbell was found "might also qualify as a 'park,' where POCA is prohibited" under the statute, and that "[t]he police . . . would have had probable cause to

(continued…)

**IV.**

For the foregoing reasons, we reverse Mr. Campbell's conviction for possession of an open container of alcohol in a vehicle and remand for entry of a judgment of acquittal on that count. As both parties agree that Mr. Campbell's conviction for receiving stolen property should not stand in light of his simultaneous conviction for first-degree theft, we also remand to allow the court to vacate the conviction for receiving stolen property. We affirm the judgment of the Superior Court as to Mr. Campbell's convictions for first-degree theft and

---

(…continued)

believe that appellant was violating subsection (a)(4) of the statute, which prohibits POCA in '[a]ny place to which the public is invited and for which a license to sell alcoholic beverages has not been issued under this title.'" These were not the theories under which the government prosecuted Mr. Campbell, and even if we were to address these perfunctory arguments, *see Stone v. Alexander*, 6 A.3d 847, 849 n.4 (D.C. 2010) ("Where a party generally raises an issue on appeal without supporting argument, we deem it to be abandoned."), the record contains insufficient evidence that the "grass median in between [two] parking lots" where Officer Poor found Mr. Campbell was either a "park" within the meaning of § 25-1001 (a)(2) or a "place to which the public is invited and for which a license to sell alcoholic beverages has not been issued" under § 25-1001 (a)(4). We have no occasion to decide in this case whether a vehicle parking lot might, under some circumstances, fall under (a)(4) or another provision of § 25-1001. Similarly, with respect to the government's argument that Mr. Campbell violated the POCA statute when he drove the Infiniti over public streets en route to the grassy area where he was later found sleeping in the vehicle, the government has not presented sufficient proof to establish beyond a reasonable doubt that Mr. Campbell possessed the bottle of vodka and that the bottle was "open" at the time he made that trip.

unauthorized use of a vehicle.[13]

*So ordered.*

---

[13] We agree with the government that Mr. Campbell's suppression claim is waived. On appeal, Mr. Campbell argues that his arrest for possession of an open container of alcohol in a vehicle was unlawful because the statute did not reach his conduct and for that reason the Superior Court should have granted his motion to suppress the fruits of the search conducted pursuant to his arrest. In moving for suppression at trial, Mr. Campbell argued—both in writing and orally before the judge—that Officer Poor violated the Fourth Amendment when he approached the car in which Mr. Campbell was sitting without a warrant. The motion did not put the trial court on notice, even in vague terms, of the question of statutory construction now before this court. This court treats failure to raise an objection in a motion to suppress as waiver of that argument. *See Artis v. United States*, 802 A.2d 959, 965 (D.C. 2002); Super. Ct. Crim. R. 12 (d).