*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CO-894

JAMES CAMPBELL, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-10147-14)

(Hon. Milton Lee, Motion Judge)

(Submitted October 10, 2019                     Decided January 30, 2020)

*Vincent A. Jankoski* was on the brief for appellant.

*Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Elizabeth H. Danello*, *Bernard Delia*, and *Kristina Ament*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, THOMPSON, *Associate Judge*, and NEBEKER, *Senior Judge*.

THOMPSON, *Associate Judge*:    Appellant James Campbell argues that the Superior Court erred in denying his D.C. Code § 23-110 (2012 Repl.) motion. We affirm the ruling of the motion judge.

**I.**

The factual background of this case is set out more fully in this court's opinion in *Campbell v. United States*, 163 A.3d 790 (D.C. 2017) ("*Campbell I*"). The following is a brief summary of the facts pertinent to the instant appeal. At approximately 3:00 a.m. on June 9, 2014, Metropolitan Police Department ("MPD") Officer George Poor was on routine patrol in the area of Third and I Streets, N.W., Washington, D.C., when he observed an Infiniti sedan parked on a grassy median between two parking lots in the vicinity of Mount Carmel Baptist Church. Because the area was known for prostitution, the car was parked in an unusual manner, and the rear passenger window of the car was missing and had been replaced with a towel, Officer Poor decided to drive into the parking lot, turn on his emergency lights, and approach the Infiniti on foot with a flashlight. The car was not running and no lights were on in the vehicle. As Officer Poor shined his flashlight into the car, he observed an individual, later identified as Mr. Campbell, slumped in the driver's seat of the car. The officer testified that the individual's lack of reaction to the emergency lights and to the officer's approach made him "somewhat concerned for the well-being of the person inside the car[.]" At this point, Officer Poor knocked on the driver's window to get Mr. Campbell's attention. As Officer Poor was looking into the vehicle, he observed a bottle of

Absolut vodka "a third to maybe halfway empty" in the front center console, in the proximity of Mr. Campbell's right arm. When asked by Officer Poor whether he had been drinking, Mr. Campbell admitted to taking "a couple of sips" of the vodka. Officer Poor arrested Mr. Campbell for possession of an open container of alcohol ("POCA"). In the search incident to that arrest, he recovered the key to the car in appellant's pocket, two stolen watches, and a screwdriver, as well as paperwork indicating that Mr. Campbell was not the owner of the Infiniti. A further search at the police station revealed four shards of glass in Mr. Campbell's pocket, which appeared to be consistent with the shards found on and near the shattered window of the Infiniti.

On October 3, 2014, Mr. Campbell, through his counsel, filed a motion to "suppress any tangible evidence obtained as a result of [his] illegal stop" and subsequent arrest, arguing that Officer Poor had no reason to stop Mr. Campbell because his vehicle was parked in a private parking lot, the officer had no basis to believe the vehicle was parked illegally, there was no basis for an investigative detention, the officer did not believe that the car was stolen or that the driver was in distress, there had been no calls raising concern regarding the vehicle or its occupant, and none of appellant's actions warranted the belief that criminal activity was afoot. At an October 30, 2014, pre-trial status hearing, trial counsel

characterized the motion to suppress as "a very basic motion. It's just based soley [sic] on the stop." Counsel also agreed with the trial court that the basis of the motion was "the legitimacy of the stop." Because of the unexceptional nature of the arguments raised in the motion to suppress, trial counsel estimated that a motions hearing would be brief, and consented to have the motion resolved on the basis of the testimony at trial instead.

On November 4, 2014, the trial court denied Mr. Campbell's suppression motion, addressing it after resolving appellant's motion for judgment of acquittal. As to the latter motion, the trial court reasoned, without objection from appellant's trial counsel, that the evidence sufficed for conviction on the POCA count because the bottle of liquor was unsealed and was in physical proximity to appellant. In addressing the motion to suppress, the trial court reasoned that the officer's observation that the vehicle had a broken window and was parked on grass instead of in one of the many available parking spaces, his further observation that there was "somebody possibly asleep [or unconscious] in the driver's seat," and his knowledge that the area was known for prostitution gave the officer "at least reasonable articulable suspicion" to investigate further. Appellant's trial counsel responded that the vehicle's location on private property meant that anything strange about where the vehicle was parked did not give the officer "a right to

approach." When the court then remarked that the officer's (flashlight-assisted) observation of a half-empty bottle of vodka in the vehicle provided probable cause, appellant did not object that an open container on private property did not provide probable cause to believe that appellant had committed a POCA violation, but said only that he would "submit on the evidence at this point[.]"

On November 5, 2014, the jury found appellant guilty of first-degree theft (vehicle), receiving stolen property ("RSP") (vehicle), unauthorized use of a vehicle ("UUV"), and POCA. In his direct appeal, appellant argued that his arrest for POCA, i.e., for possession of an open container in a vehicle "in or upon any street, alley, park, or parking area," D.C. Code § 25-1001(a)(2) (2012 Repl.), was unlawful because the statute did not reach his conduct: possessing an open container of alcohol on a grassy strip in a parking lot on private property. Appellant also argued that because his arrest for POCA was unlawful, the trial court erred in denying his motion to suppress the various fruits of the search incident to arrest. On July 20, 2017, this court reversed appellant's POCA conviction, reasoning that the grassy median on private property on which he was parked did not constitute a "parking area" within the meaning of § 25-1001(a)(2), and that appellant's conduct was outside the ambit of the POCA statute. *Campbell I*, 163 A.3d at 795–98. However, we affirmed appellant's convictions for first-

degree theft and UUV, rejecting appellant's argument that the trial court erred in not suppressing the evidence of those crimes as the fruits of appellant's unlawful arrest for POCA. *See id.* at 798, 798 n.13.[1] We did so on the ground that appellant had waived that basis for suppression because his suppression motion and related oral argument before the trial court "did not put the trial court on notice, even in vague terms, of the question of statutory construction now before this court." *Id.* at 798 n.13.

On August 1, 2017, Mr. Campbell filed a § 23-110 motion under the theory that his trial counsel provided ineffective assistance of counsel in that he failed to argue that the POCA statute did not reach possession of an open container in the area where he was parked. The trial court denied appellant's motion without a hearing, finding that trial counsel "did raise the contention that the car was parked on private property" and "did raise the claim alleged to have been omitted." The court therefore ruled that appellant failed to make the required showing that his trial counsel's performance was deficient.

---

[1] "As both parties agree[d] that Mr. Campbell's conviction for receiving stolen property should not stand in light of his simultaneous conviction for first-degree theft, we also remand[ed] to allow the [trial] court to vacate the conviction for receiving stolen property." *Id.* at 798.

This appeal followed. Appellant argues that the trial court's rationale for denying his § 23-110 motion — i.e., that trial counsel *did* argue that appellant's possession of an open container of alcohol while parked on private property did not constitute a POCA violation — was erroneous and in conflict with this court's decision and mandate in *Campbell I*.

## II.

The following principles guide our analysis. In order to demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient, and that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish deficiency, a defendant must show that trial counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Dickerson v. District of Columbia*, 182 A.3d 721, 730 (D.C. 2018) (internal quotations omitted). To show prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We need not address both prongs of the test if appellant does not meet the burden of one or the other showing. *Id.* at 697.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Porter v. United States*, 37 A.3d 251, 256 (D.C. 2012). More specifically, and as is pertinent here, a contention of prejudice arising from a failure to effectively litigate a motion requires a multi-step analysis. *Turner v. United States*, 116 A.3d 894, 934–35 (D.C. 2015). The defendant must first demonstrate a "reasonable probability that a competent attorney" would have filed the motion the question. *Id.* He must then demonstrate a reasonable probability that the motion, if properly litigated, would have been granted, and that if the motion had been granted, it is reasonably probable that the trial would have ended in an acquittal. *Id.*

An appellate court may affirm a judgment on any valid ground, including reasons other than those given by the trial court, so long as the appellant has had "a reasonable opportunity to be heard with respect to the reasoning on which the proposed affirmance is to be based[.]" *Randolph v. United States*, 882 A.2d 210, 218 (D.C. 2005); *see also Wilson-Bey v. United States*, 903 A.2d 818, 844 n.45

(D.C. 2006) (using discretion to entertain the government's harmless error claim even where it had waived the argument by failing to raise the argument to the division, because it had made the argument in its brief to the *en banc* court, and both appellants were given the opportunity to respond).

"We review the trial court's denial of appellant's D.C. Code § 23-110 motion without a hearing for an abuse of discretion." *Copeland v. United States*, 111 A.3d 627, 630 (D.C. 2015) (internal quotations omitted).

## III.

The government agrees with appellant (as do we) that the trial court's rationale in denying the § 23-110 motion was "incorrect,"[2] but urges us to sustain

---

[2] As described above, appellant's trial counsel argued that the vehicle's location on private property meant that the officer had no right to approach the vehicle, however strange it might have looked. Counsel did not argue that an open container in a vehicle parked on private property failed to establish probable cause to believe that appellant, the individual at the steering wheel, had committed a POCA violation. Even if the record were ambiguous on these points, our determination in *Campbell I* that appellant's trial counsel waived the statutory "parking area" argument for suppression is the law of the case and barred the trial court from reconsidering the issue of whether counsel waived the argument. *See In re Baby Boy C.*, 630 A.2d 670, 678 (D.C. 1993) ("It is well established that once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court[]"; noting that "[t]his

(continued…)

the trial court's ruling on the alternative ground that even if the statutory argument for suppression been raised at trial, it "would not have been meritorious," meaning that counsel's failure to advance the argument did not prejudice appellant. Specifically, the government contends that Officer Poor's belief, i.e., that the grassy median between the two private parking lots came within the reach of the POCA statute, was a reasonable mistake, *see Heien v. North Carolina*[3]; and that even though Officer Poor lacked probable cause to arrest appellant for a POCA violation, he had probable cause to arrest him for driving under the influence of alcohol ("DUI"). Appellant argues that Mr. Campbell's arrest for POCA was unreasonable because MPD was already on notice at the time of the arrest that the POCA statute did not cover conduct on private property.[4] Additionally, he

---

(…continued)

law of the case doctrine applies with equal force in a second or successive appeal to a decision rendered in a prior appeal."); *see also Willis v. United States*, 692 A.2d 1380, 1382 (D.C. 1997) ("The mandate of an appeals court precludes the trial court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal.") (brackets and internal quotation marks omitted).

[3] 574 U.S. 54, 57 (2014) (holding that a traffic stop, which a police officer initiated upon his mistaken understanding that the state vehicle law required two working brake lights, was lawful under the Fourth Amendment because the officer's mistake was reasonable).

[4] Appellant also argues that the government's arguments are not properly before this court because they were not raised below. We disagree. Appellant first made his statutory argument in his brief in *Campbell I*, and the government raised

(continued…)

contends that his arrest cannot be justified on the basis of probable cause that he had been driving while intoxicated ("DWI") because there was no evidence that he operated a motor vehicle on a highway at the same time that he was under the influence of alcohol. We conclude that the government has the better of these arguments, which we take in turn.

In *Heien*, a police officer pulled over a car for having a broken brake light, purporting to enforce a state law requiring that "all originally equipped rear lamps" be "in good working order." *Heien*, 574 U.S. at 57 (citing to N.C. Gen. Stat. Ann. § 20-129(d)). The North Carolina Court of Appeals subsequently held that the statutory term "rear lamps" does not include brake lights, and that thus there was no statutory basis for the stop. When the matter made its way to the United States Supreme Court, the Court ruled that the ambiguous statutory phrase, coupled with the lack of precedent interpreting the provision at the time of the traffic stop, made

---

(…continued)

its *Heien* argument at that time in response, asserting that even if the trial court plainly erred in not recognizing that where the car was parked fell outside the reach of the POCA statute, "suppression would be unwarranted because Officer Poor relied on a mistaken, but objectively reasonable, understanding of the POCA statute." In opposing appellant's §23-110 motion, the government did not again cite *Heien*, but did argue that Officer Poor had a "reasonable belief" that appellant "had violated the prohibition against possessing an open container of alcohol in a . . . parking area." Appellant thus has had "a reasonable opportunity to be heard with respect to the reasoning on which" the government urges us to affirm. *Randolph*, 882 A.2d at 218.

it objectively reasonable for the officer to deem a faulty brake light as constituting a violation of the statute. *Id.* Therefore, the Court held, the stop was constitutional, and it affirmed the North Carolina Supreme Court's determination that the fruits of the stop (cocaine found after a consensual search of the vehicle) were admissible. *Id.*

Analogous to the vehicle code provision involved in *Heien*, at the time of Mr. Campbell's arrest, our POCA statute was without a definition of "parking area" and was ambiguous as to what constituted the same, and this court had not yet had an opportunity to resolve the ambiguity. It was reasonable for Officer Poor to rely on the ordinary meaning of the term "parking area," *see, e.g.*, *Boyle v. Giral*, 820 A.2d 561, 568 (D.C. 2003) ("We look to the plain meaning of a statute first, construing words according to their ordinary meaning."), especially given that this court had previously affirmed a POCA conviction based on possession of an open container of vodka in the parking lot of a private employer. *See Derosiers v. District of Columbia*, 19 A.3d 796, 798 (D.C. 2011). The question presented in the instant appeal is not whether the grassy median upon which Mr. Campbell was parked qualifies as a "parking area" that falls within the ambit of the POCA statute (we have already decided that it does not), but only whether Officer Poor's belief that it so qualified was objectively reasonable at the time of appellant's arrest. We

conclude that the officer's mistaken belief was objectively reasonable, and that his action in arresting Mr. Campbell was reasonable, albeit mistaken. *Cf. United States v. Diaz*, 854 F.3d 197, 203–5 (2d Cir. 2017) ("Officer Aybar had probable cause to arrest Diaz for a violation of New York's open-container law based on a reasonable belief that an apartment-building stairwell is a public place for purposes of that law[,]" an assessment that was "premised on a reasonable interpretation of an ambiguous state law, the scope of which had not yet been clarified"; citing *Heien*).

Appellant counters that the government's *Heien* argument is refuted by the "Report and Recommendations of the Police Complaints Board to Mayor Adrian M. Fenty, the Council of the District of Columbia, and Police Chief Cathy Lanier dated August 17, 2009" ("Report"). The Report recognized that MPD's then-current enforcement of the POCA statute could lead to arbitrary enforcement and constitutional challenge in the context of complaints that individuals were arrested for POCA violations while on private, residential property. It cited officers' "lack [of] a clear understanding of the concept of "parking," a form of public property subject to POCA which is commonly used as residential property,"[5] and "a clear need for MPD to take action to properly educate its officers about how legally to

---

[5] *See* the discussion of "parking" in *Campbell I*, 163 A.3d at 795–97.

enforce POCA in the residential context." Report at 7. The Report also advised MPD to conduct training on "all aspects of POCA enforcement" with a focus on the residential context, since this is "the area of greatest confusion[.]" *Id.*

While the Report may have put MPD on notice about the intricacies of the POCA statute as it applies in residential areas (particularly front and back yards), we are not persuaded that the Report (or any training that might have followed it) undermines the reasonableness of Officer Poor's pre-*Campbell I* belief that appellant's possession of an open bottle of vodka in a vehicle parked in a grassy median in a church parking lot violated the POCA statute. That being the case, we cannot conclude that the officer's arrest of appellant for POCA, albeit not authorized by the POCA statute, was in violation of the Fourth Amendment.

Officer Poor also likely had probable cause to arrest Mr. Campbell for DUI. *See* D.C. Code § 50-2206.11 (2012 Repl.) ("No person shall operate or be in physical control of any vehicle in the District . . . [w]hile the person is under the influence of alcohol . . . ."). When Officer Poor encountered appellant, he was "semiconscious or unconscious, a half-empty bottle of Absolut vodka was in the vehicle's center console[,]" and appellant acknowledged that he had drunk some of

the vodka. *Campbell I*, 163 A.3d at 792. According to the *Gerstein* affidavit, appellant's "eyes were glazed and he had trouble focusing his attention." The jury's guilty verdict as to UUV established that he "took, used, or operated" the car, and Office Poor's testimony about not seeing the car in the parking lot during his earlier rounds established that the car had been driven recently. In addition, we agree with the government that the evidence that the car was parked on the grassy median when, as Officer Poor put it, "there w[ere] plenty of other available parking" spaces in the two parking lots permitted an inference that appellant drove the car there while under the influence of alcohol. And in any event, the evidence that appellant was alone in the car "in front of the [steering] wheel" with the key to the car in his pocket, showed that he "was capable of starting the vehicle should he have awakened and, in his impaired state, made a decision to drive" and thus "was in physical control of the vehicle for the purpose of [the DUI statute]." *Bell v. District of Columbia*, 132 A.3d 854, 857 (D.C. 2015).

Because Officer Poor's conduct in arresting Mr. Campbell for a POCA violation was reasonable under *Heien* and because Officer Poor also likely had probable cause to arrest appellant for DUI, appellant has not shown a reasonable probability that his motion to suppress would have been successful even if his trial counsel had included in it the statutory-construction argument on which appellant

prevailed in his direct appeal. Accordingly, appellant has not shown a reasonable probability that the fruits of the search incident to his POCA arrest would have been deemed inadmissible by the trial court, and thus has not shown prejudice from trial counsel's omission. We therefore affirm the trial court's denial of appellant's D.C. Code § 23-110 motion.

*So ordered.*