*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CT-0276

MICHAEL D. FLOWERS, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CDC-003737)

(Hon. Frederick H. Weisberg, Motions Judge)
(Robert E. Morin, Trial Judge)

(Argued March 26, 2025                    Decided September 4, 2025)

*Adrian E. Madsen* for appellant.

*Tessa Gellerson*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and MCLEESE, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Michael D. Flowers appeals his conviction for violating D.C. Code § 22-1312, which prohibits, among other things, certain indecent or obscene exposures. Mr. Flowers was convicted in a bench

trial, with the trial court finding that he attempted to follow a woman into the condominium building where they both lived while his genitalia were exposed and without making an attempt to cover himself. On appeal, Mr. Flowers makes two principal arguments. First, he argues that the trial court erred in ruling that Section 22-1312 applied to his conduct on the walkway in front of the condominium building because the statute does not apply to conduct on private property. Therefore, according to Mr. Flowers, the evidence was insufficient to sustain a conviction. Second, he argues that the trial court abused its discretion in granting the government's motion to continue trial.

We conclude that Section 22-1312 is not limited to conduct on public property. Accordingly, we hold that the trial court did not err in ruling that the statute applied to Mr. Flowers's conduct in exposing his genitalia on the walkway in front of the condominium building and, therefore, the evidence was sufficient to sustain Mr. Flowers's conviction. We also hold that any error in granting the motion to continue trial was harmless, as Mr. Flowers's arguments to the contrary are foreclosed by our recent ruling in *Carper v. District of Columbia*, 332 A.3d 1110 (D.C. 2025). We therefore affirm Mr. Flowers's conviction.

## I.    Factual and Procedural Background

We adduce the following facts from the trial record, including testimony at trial.  Shortly after midnight on July 2, 2022, Ms. Laura Okpala was exiting a rideshare vehicle outside of her condominium building located at 1825 T Street NW, Washington, D.C.  As she exited the vehicle, she saw a man that she identified at trial as Mr. Flowers "naked from the bottom half," "exposed," and "in the bushes" near the front of the building.  According to Ms. Okpala, Mr. Flowers was wearing a sweatshirt that "wasn't . . . long enough to cover his genitals or buttocks."  As Ms. Okpala walked towards the front door of the building, she noticed Mr. Flowers following her.  After Ms. Okpala entered the building, she looked through the glass entry door and observed Mr. Flowers "yelling" and "screaming" at her as he tried "to gain entry into the building" by "pulling at" and "kicking" the door.  According to Ms. Okpala, Mr. Flowers "looked very much in distress."  Mr. Flowers then found "some sort of metal grate" that he used to pry the door open and enter the building.  Mr. Flowers was not making any attempt to cover his genitalia during this time.

Once inside the lobby of the building, Mr. Flowers walked up a set of stairs towards the elevator where Ms. Okpala was standing.  Mr. Flowers then proceeded to charge at Ms. Okpala, which resulted in a scuffle.  After the scuffle, Ms. Okpala noticed that a phone that she believed to belong to Mr. Flowers had fallen to the

floor. Ms. Okpala took the phone and went back outside through the front door of the building to call the police because she "did not feel safe in the building with him running around." Mr. Flowers subsequently followed Ms. Okpala back to the building's front door and stood there while she was standing on a sidewalk approximately ten to twenty feet from the building entrance and speaking to the police on the phone. Ms. Okpala testified that Mr. Flowers then propped the door open and repeatedly asked her for his phone before he approached her, at which point he grabbed her hair and slammed her against a car.[1]

Mr. Flowers was charged with one count of lewd, indecent, or obscene acts in violation of D.C. Code § 22-1312. Following a bench trial, the trial court found Mr. Flowers guilty. Mr. Flowers filed a post-conviction motion for ineffective assistance of counsel pursuant to D.C. Code § 23-110. The trial court granted the motion in part, vacated Mr. Flowers's conviction, and set a new trial date of January 24, 2024.

On December 1, 2023, the government filed a motion to continue trial after Ms. Okpala informed the government four days earlier that she would no longer be available to testify on January 24, 2024, due to a work obligation that required her

---

[1] At trial, Mr. Flowers disputed Ms. Okpala's testimony that he grabbed her hair and slammed her against a car.

to attend a conference in Las Vegas, Nevada, from January 22, 2024, through January 25, 2024. Mr. Flowers opposed the motion. The trial court granted the motion in a brief written order, finding that "good cause ha[s] been shown," and set a new trial date of March 18, 2024.

At the second trial, the government presented Ms. Okpala and Metropolitan Police Department (MPD) Officer Nathan Clarke as its two witnesses. Mr. Flowers did not present any witnesses. Mr. Flowers moved for judgment of acquittal at the conclusion of the government's case, arguing that Section 22-1312 applied only on public property. In closing, Mr. Flowers also argued that the necessity defense applied to his alleged conduct when he left the building to retrieve his cell phone from Ms. Okpala because she committed robbery by forcibly taking possession of his cell phone during the altercation inside the building.

The trial court found Mr. Flowers guilty on one count of lewd, indecent, or obscene acts in violation of D.C. Code § 22-1312. According to the trial court's factual findings, Mr. Flowers made consistent efforts to cover his genitalia while standing outside the building just prior to Ms. Okpala arriving at the front walkway. The trial court found, however, that once Ms. Okpala arrived, there was "no attempt to cover himself" and "from that point forward . . . his genitalia [were] exposed on a consistent basis." The trial court rejected Mr. Flowers's argument that

Section 22-1312 applies only on public property, relying in part on *Bolz v. District of Columbia*, 149 A.3d 1130 (D.C. 2016). The trial court did not explicitly rule on Mr. Flowers's necessity argument, as it found that Mr. Flowers began violating the statute "when he was in the walkway of the condominium that argues open to the public" and was "trying to break into the building" without covering himself, which occurred before Ms. Okpala took his phone.

The trial court sentenced Mr. Flowers to eighty days of incarceration, with the execution of his sentence suspended as to all in favor of thirty days of unsupervised probation. Mr. Flowers timely noted his appeal.

## II.    Discussion

Mr. Flowers argues that the evidence is insufficient to sustain a conviction under Section 22-1312 because (1) the statute only proscribes conduct that occurs on public property, (2) the trial court found Mr. Flowers guilty based on his conduct in the walkway in front of the condominium building, which is private property, and (3) the necessity defense applies to his conduct when he attempted to retrieve his phone from Ms. Okpala while on public property.[2] Mr. Flowers argues in support

---

[2] As discussed, Mr. Flowers takes the position that Section 22-1312 only applies on public property and thus could only apply to his conduct when he ventured beyond the walkway in front of the building and onto a public sidewalk and street to

of his construction of Section 22-1312 that, among other things, the plain meaning of "in public" is "clear and unambiguous" such that the statute applies only on public property. Mr. Flowers emphasizes that the D.C. Council amended Section 22-1312 to proscribe an obscene or indecent exposure only if it occurs "in public" and this amendment occurred *after* this court had already interpreted "indecent" to mean "open to the observation of others." Thus, according to Mr. Flowers, it would be superfluous to interpret "in public" to mean the same thing as "indecent." The government argues that the trial court correctly determined that Mr. Flowers's conduct on the front walkway outside of the building fell within the scope of Section 22-1312. According to the government, the plain text and legislative history of Section 22-1312 make clear that "in public" is not limited to public property. The

---

retrieve his phone from Ms. Okpala. According to Mr. Flowers, "the evidence was insufficient to prove beyond a reasonable doubt that necessity did not excuse Mr. Flowers'[s] brief exposure of his genitalia on public property" because, among other things, the harm that would have resulted from allowing Ms. Okpala to commit robbery by taking his phone would have exceeded the harm that resulted from Mr. Flowers's "very brief" indecent exposure. Mr. Flowers's argument fails. The trial court did not explicitly rule on the merits of, or make factual findings related to, Mr. Flowers's necessity argument because it concluded that Section 22-1312 is not limited to conduct on public property and that Mr. Flowers therefore violated the statute when he first exposed himself on the front walkway while trying to break into the building. As discussed in more detail *infra*, we agree with the trial court that Section 22-1312 applied to Mr. Flowers's conduct on the front walkway because the statute is not limited to conduct on public property. Accordingly, the trial court did not err in declining to reach the merits of Mr. Flowers's necessity argument because the evidence of his first exposure on the front walkway—which occurred prior to Ms. Okpala taking his phone—is sufficient to sustain his conviction.

government also asserts that Mr. Flowers's construction of the statute "would generate absurd results and workability concerns."

Mr. Flowers separately argues that the trial court abused its discretion in granting the government's motion to continue trial. According to Mr. Flowers, the government failed to make the showing that he asserts a party seeking a trial continuance is required to make under this court's case law. Mr. Flowers further argues that the trial court's error was not harmless because Ms. Okpala's testimony was essential to the government's case and, therefore, the judgment may have been substantially swayed by the error. In response, the government argues, among other things, that the mere fact that the continuance enabled Ms. Okpala to testify against Mr. Flowers does not constitute prejudice and that his arguments are thus foreclosed by this court's ruling in *Carper*, 332 A.3d 1110.

As explained below, we hold that Section 22-1312 applies to Mr. Flowers's exposure of his genitalia on the front walkway outside of the condominium building. Therefore, the evidence pertaining to Mr. Flowers's conduct when he initially confronted Ms. Okpala and attempted to enter the building was sufficient to sustain his conviction. Further, we agree with the government that *Carper* forecloses Mr. Flowers's argument that the trial court committed reversible error in granting

the government's motion to continue trial because he fails to make a showing that he suffered prejudice warranting reversal. Accordingly, we affirm the trial court.

## A. Applicability of Section 22-1312

"We review sufficiency of the evidence and embedded statutory interpretation issues de novo." *Robinson v. United States*, 263 A.3d 139, 141 (D.C. 2021). Under Section 22-1312, it is "unlawful for a person, in public, to," among other things, "make an obscene or indecent exposure of his or her genitalia or anus."[3] D.C. Code § 22-1312. It is long-standing precedent of this court that "[a]n exposure becomes indecent when the defendant exposes himself at such a time and place, where as a reasonable man he knows or should know his act will be open to the observation of others." *Parnigoni v. District of Columbia*, 933 A.2d 823, 826 (D.C. 2007) (quoting *Peyton v. District of Columbia,* 100 A.2d 36, 37 (D.C. 1953)). In 2011, the D.C. Council amended Section 22-1312 by, among other things, limiting the reach of the statute to obscene or indecent exposures that take place "in public." *Compare* D.C. Code § 22-1312 (2007) ("It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person . . . .") *with* D.C. Code

---

[3] It is also unlawful under Section 22-1312 for "a person, in public, . . . to engage in masturbation, . . . to engage in" certain statutorily defined "sexual act[s]," and "to make an obscene or indecent sexual proposal to a minor." D.C. Code § 22-1312.

§ 22-1312 (2011) ("It is unlawful for a person, *in public*, to make an obscene or indecent exposure of his or her genitalia or anus . . . ." (emphasis added)). The Committee on Public Safety and the Judiciary (Committee) explained that this amendment was "intended to be simple, so that it is easily understood and uncomplicated to enforce. It is important to understand that this provision does not criminalize any kind of sexual act[;] rather, it retains the crime of having sex *in public* - meaning *in open view; before the people at large; not in private or secrecy*." Committee Report, Report on Bill No. 18-425 before the Committee on Public Safety and the Judiciary, Council of the District of Columbia at 7 (Nov. 18, 2010) (2010 Committee Report) (second emphasis added).

Although we have not addressed whether the current version of Section 22-1312 can apply to conduct on private property, in *Bolz* we discussed the scope of the statute in the context of a First Amendment overbreadth challenge. 149 A.3d 1130. In that case, the appellant was convicted under Section 22-1312 after he climbed on top of a wooden structure located on public property during a protest and urinated "in full view of the people on site." *Id.* at 1134-36. In rejecting the appellant's overbreadth challenge, we noted that the statute

> applies only "in public," a phrase that the legislative history defines as "in open view; before the people at large." Thus, the challenged provision does not encompass a number of the settings cited by [the

> appellant], for example, an in-studio display of nudity for a painting class or an indoor theatrical performance that requires the purchase of a ticket. Instead, the revised statute confines this provision's reach to settings wherein expressive nudity can be constitutionally regulated because minors might be present or nonconsenting adults are not easily shielded from displays of nudity.

*Id.* at 1143 (citation omitted).[4]

When interpreting statutory text, "'our analysis starts with the plain language of the statute' and assumes 'that the intent of the lawmakers is to be found in the language that they used.'" *Lucas v. United States*, 305 A.3d 774, 777 (D.C. 2023) (brackets omitted) (quoting *Reese v. Newman*, 131 A.3d 880, 884 (D.C. 2016)). Further, "[w]hen the statute does not define the term in question, 'it is appropriate for us to look to dictionary definitions to determine [its] ordinary meaning.'" *Id.*

---

[4] The government argues that *Bolz* is "binding precedent from this [c]ourt interpreting the precise statutory language at issue" and thus "resolves this issue." Although *Bolz*'s discussion of the scope of the statute and its references to the statute's legislative history are highly instructive of whether the statute applies on private property that is in open view of the public, *see* 149 A.3d at 1143, we disagree with the government that *Bolz* controls this case. We "'equate[] binding precedent . . . with the rule of stare decisis,' which 'is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.'" *Parker v. K & L Gates, LLP*, 76 A.3d 859, 873 (D.C. 2013) (Ferren, J., concurring for a majority of the court) (emphasis omitted) (quoting *United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012)). In *Bolz*, we did not address the distinction that Mr. Flowers raises here between conduct on public property and conduct on private property that is in open view of the public. Indeed, we had no reason in *Bolz* to address the applicability of the statute to conduct on private property, as it was undisputed that the appellant's conduct occurred on public property. *See* 149 A.3d at 1134-36. Accordingly, *Bolz* does not control this case.

(quoting *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc)). We also "consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022) (quoting *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020)). "We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Id.* (quoting *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019)).

We generally adhere to the canon of statutory construction under which "each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." *Thomas v. D.C. Dep't. of Emp. Servs.*, 547 A.2d 1034, 1037 (D.C. 1988). Nonetheless, this "preference for avoiding surplusage constructions is not absolute" and "is not dispositive of the case." *Czajka v. Holt Graphic Arts, Inc.*, 310 A.3d 1051, 1061 (D.C. 2024) (first quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004); and then quoting *District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C. 1998)). Indeed, surplusage may "simply reflect[] 'an abundance of caution'" on the part of the legislature. *Id.* (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008)).

Applying these principles, we hold that Section 22-1312 is not limited to conduct on public property and, therefore, the evidence of Mr. Flowers's exposure

on the walkway of the condominium building is sufficient to sustain a conviction under the statute. "Our analysis starts with the plain language of the statute," and "it is appropriate for us to look to dictionary definitions to determine its ordinary meaning" if "the statute does not define the term in question." *Lucas*, 305 A.3d at 777 (brackets omitted) (first quoting *Reese*, 131 A.3d at 884; and then quoting *Tippett*, 10 A.3d at 1127). Because "in public" is not defined under the statute, *see* D.C. Code § 22-1312, we begin our analysis by looking to relevant dictionary definitions. To that end, the plain meaning of "in public" is "in a place where one can be seen by many people." *In public*, merriam-webster.com, https://www.merriam-webster.com/dictionary/in%20public (last visited August 22, 2025); https://perma.cc/38VR-5PYX; *see also Public*, Black's Law Dictionary (12th ed. 2024) ("A place open or visible to the public."). Mr. Flowers does not identify any dictionary definition of "in public"—nor are we aware of one—that makes any reference to public property. The lack of any textual support for limiting the scope of Section 22-1312 to conduct on public property is all the more revealing given that the Council has explicitly limited the scope of various statutes to conduct on "public property." *See, e.g.*, D.C. Code § 50-2201.04b (prohibiting the use of all-terrain vehicles and dirt bikes "on public property"); D.C. Code § 5-132.21 (mandating that MPD consider the incidence of certain crimes "on public space or public property" when determining whether to designate a school safe passage emergency zone); D.C.

Code § 22-3312.02 (prohibiting defacement of certain symbols and displays of certain emblems "on public property"); D.C. Code § 25-726 (requiring that certain alcoholic beverage licensees "take reasonable measures to ensure that . . . public property immediately adjacent to the establishment . . . [is] kept free of litter"). The plain meaning of "in public" thus provides strong support for our conclusion that Section 22-1312 is not limited to conduct on public property.

Our reading of the statute's plain text is confirmed by its legislative history and evident legislative purpose. As we discussed in *Bolz*, the Committee understood "in public" to mean "in open view; before the people at large." 149 A.3d at 1143 (quoting 2010 Committee Report at 7). It is axiomatic that "in open view" and "before the people at large" covers settings on private property, including private schools and daycare facilities, sports arenas, concert venues, restaurants, grocery stores, and gyms, among myriad other locations. The legislative history clearly evinces the Council's intent to exclude exposures "in private or secrecy" from the scope of the statute, but it tellingly does not indicate any intent to exclude all exposures on private property. 2010 Committee Report at 7. In sum, we read the legislative history as unambiguously demonstrating the Council's intent for the statute to prohibit exposures that occur "in open view" and "before the people at large" without regard for whether they occur on public or private property. *Id.*

Mr. Flowers suggests that our construction of Section 22-1312 would make the statute "incredibly subjective, subject to interpretation, and ripe for inconsistent enforcement." In our view, any subjectivity or inconsistent enforcement that could result from our construction of the statute pales in comparison to the absurd consequences that would result from limiting the reach of the statute to conduct on public property. As the government argues, the statute, if interpreted as Mr. Flowers proposes, "would no longer proscribe the exposure of one's genitalia in a private daycare or elementary school simply because one was on private property.[5] One could streak naked through the Capitol One Arena or expose oneself in a crowded Trader Joes checkout line" without violating the statute. There is simply no support in the statutory text or legislative history for a construction of Section 22-1312 that would exclude these exposures from the scope of the statute.

To be sure, Mr. Flowers is correct that this court generally adheres to the canon of statutory construction under which "each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." *Thomas*, 547 A.2d at 1037. But this "preference for

---

[5] We note that such conduct does not appear to be prohibited by any of the District's child-sexual-abuse statutes. For example, misdemeanor sexual abuse of a child or minor is limited to certain acts that constitute "sexually suggestive conduct," which is defined, in relevant part, as "[t]ouching one's own genitalia" in a manner that "is intended to cause or reasonably causes the sexual arousal or sexual gratification of any person." D.C. Code § 22-3010.01.

avoiding surplusage constructions is not absolute" and "is not dispositive of the case." *Czajka*, 310 A.3d at 1061 (first quoting *Lamie*, 540 U.S. at 536; and then quoting *Jerry M.*, 717 A.2d at 871). Put simply, we are unwilling to construe Section 22-1312 in a manner that avoids surplusage when all other relevant considerations—including the plain meaning of the statutory text, the legislative history, the evident legislative purpose, and the consequences of adopting the parties' proposed constructions of the statute—support a construction that results in surplusage. *See id.* at 1061-62 ("[W]e do not view the canon against superfluity as outweighing the considerations that support the interpretation we adopt."); *In re Macklin*, 286 A.3d at 553 (explaining that we consider "statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation" when interpreting a statute).

Mr. Flowers relies on *Campbell v. United States*, 163 A.3d 790 (D.C. 2017) to support his proposed construction of the statute, but this reliance is misplaced. In *Campbell*, we reversed the appellant's conviction for violating Section 25-1001, under which it is unlawful to "possess in an open container an alcoholic beverage in . . . a vehicle in or upon any street, alley, park, or parking area." 163 A.3d at 795 (brackets omitted) (quoting D.C. Code § 25-1001(a), (a)(2)). We ruled that the appellant's conduct was not covered by the statute because he was not located in a "parking area" within the meaning of the statute. *Id.* at 798. In doing so, we rejected

the government's argument that, because the jury could have found the appellant was in an area that was not privately owned, the appellant fell within the scope of the statute. *Id.* at 797-98. We explained that Section 25-1001 only applied "in enumerated places," and we cited Section 22-1312 as an example of the Council understanding how "to prohibit an act in any public place" when it wants to do so. *Id.* at 798. Our reference to Section 22-1312 was thus limited to providing an example of a statutory prohibition on certain acts "in any *public place*" and contrasting it from Section 25-1001's prohibition on certain acts "in *enumerated places.*" *Id.* (emphases added). We simply did not address the issue whether "in public" under Section 22-1312 is limited to public property. *Campbell* therefore does not support Mr. Flowers's argument.[6]

---

[6] Mr. Flowers also suggests that *Robinson*, 263 A.3d 139, supports his proposed construction of the statute. In that case, we upheld the appellant's conviction under the District's voyeurism statute, which prohibits, in relevant part, "intentionally captur[ing] an image of a private area of an individual . . . under circumstances in which the individual has a reasonable expectation of privacy . . . ." *Id.* at 140 (quoting D.C. Code § 22-3531(d)). We rejected the appellant's argument that the complainant did not have a reasonable expectation of privacy while she was riding an escalator in Union Station. *Id.* at 141-42. Mr. Flowers relies on our observation that the voyeurism statute "does not look to physical location to define expectations of privacy; instead it more broadly refers to 'circumstances in which the individual has a reasonable expectation of privacy.'" *Id.* at 142 (quoting D.C. Code § 22-3531(d)). According to Mr. Flowers, Section 22-1312's focus on physical location, rather than "circumstances" like in the voyeurism statute, serves as evidence that Section 22-1312 is limited to conduct on public property. This argument is without merit. By construing Section 22-1312 such that it reaches

In sum, we conclude that Section 22-1312 is not limited to conduct on public property. Accordingly, we hold that the trial court did not err in ruling that the statute applied to Mr. Flowers's conduct on the walkway in front of the condominium building and, therefore, the evidence was sufficient to sustain his conviction.

### B. The Trial Court's Grant of the Government's Motion to Continue Trial

Our review of a trial court's continuance ruling "is highly deferential." *Cox v. United States*, 325 A.3d 360, 371 (D.C. 2024). It is well-settled under our case law that a party seeking to continue trial to obtain the testimony of a witness "must make a showing that such continuance is 'reasonably necessary for a just determination of the cause.'" *Bedney v. United States*, 684 A.2d 759, 766 (D.C. 1996) (quoting *O'Connor v. United States*, 399 A.2d 21, 28 (D.C. 1979)). In one line of cases, we have explained that the party seeking the continuance "must show '(1) who [the witness is], (2) what their testimony would be, (3) the relevance and competence of such testimony, (4) that the witness can probably be obtained if the continuance is granted, and (5) that due diligence has been used to obtain their

---

conduct on private property, we are not changing its focus on physical location. Instead, we are clarifying that a physical location that is "in open view" and "before the people at large" falls within the scope of the statute even if it is privately owned. 2010 Committee Report at 7.

attendance at trial.'"[7]  *Kimes v. United States*, 569 A.2d 104, 114 (D.C. 1989) (quoting *O'Connor v. United States*, 399 A.2d 21, 28 (D.C. 1979)).  In other cases, however, we have set forth a less stringent standard under which we will consider "a number of factors" when ruling on a trial court's grant or denial of a continuance request, including

> (1) the probative value of the evidence sought, (2) the likelihood the evidence can be obtained, (3) whether the party seeking the continuance has exercised due diligence in finding that evidence, (4) the prejudice that would result from the denial of the continuance, (5) the prejudice to the opposing party that would result from the granting of the continuance . . . , and (6) the duration of the continuance and its potential disruption or delay of the proceeding.

*Cox*, 325 A.3d at 369 (brackets omitted) (quoting *Askew v. United States*, 229 A.3d 1230, 1239 (D.C. 2020)).  As we have done in recent cases confronting this issue, *see id; Carper*, 332 A.3d at 1115, and as explained below, we decline to resolve this question because even assuming that the government was required to make the fivefold showing and that it failed to do so, any error that the trial court may have

---

[7] Mr. Flowers argues that the government did not meet this showing because it failed to: (1) provide a sufficiently detailed proffer for Ms. Okpala's testimony, thereby failing to establish the content of the testimony as well as the expected relevance and competence of the testimony; (2) address any similar or future commitments that Ms. Okpala might have, thereby failing to establish that her testimony could probably be obtained if the continuance was granted; and (3) state whether it had subpoenaed Ms. Okpala or taken any steps to place her under subpoena, thereby failing to establish that due diligence was used to obtain her attendance at trial.

made in granting the motion was harmless because Mr. Flowers was not prejudiced by the continuance.

Mr. Flowers's only argument that bears on whether he was prejudiced by the continuance is that "the trial court relied exclusively on Ms. Okpala's testimony and evidence admitted through her to find that Mr. Flowers'[s] genitalia were exposed," so under the harmless-error standard set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946), "one cannot say that the judgment was not substantially swayed by the trial court's errors." This argument fails, as we recently rejected an identical argument in *Carper*. In that case, like here, the appellant "addresse[d] the issue of harmless error by arguing that if the trial court had declined to grant a continuance, [the government's witness] would not have testified at trial and the [government] would not have been able to prove its case." *Carper*, 332 A.3d at 1116. We rejected this argument because

> beyond citing to the harmless-error standard applicable to non-constitutional issues, [the appellant] cites no support for this argument. In particular, he cites no case law for the proposition that granting a continuance so that a witness who failed to appear for a particular trial date can appear days later, where no statutory or constitutional rights are asserted to have been implicated in the scheduling of the trial, constitutes harm justifying reversal. And we are aware of none.

*Id.* at 1116-17 (citation omitted). Accordingly, we held that, even "assum[ing] for purposes of this decision that the trial court was not permitted to grant a continuance in the absence of the 'fivefold showing' . . . any error was not reversible error in the circumstances of this case." *Id.* at 1115 (quoting *Bedney*, 684 A.2d at 766). Because Mr. Flowers's theory of prejudice is identical to that which we rejected in *Carper*, we are compelled to hold that reversal is not warranted here.[8]

For these reasons, we hold that any error that resulted from the trial court's grant of the government's motion to continue trial was harmless.[9]

### III. Conclusion

For the foregoing reasons, we affirm Mr. Flowers's conviction.

---

[8] As we did in *Carper*, "[w]e need not attempt to clarify in this case the relationship between the concepts of abuse of discretion, prejudice, and harmless error, either generally or in the specific context of our review of orders granting or denying continuances" because "even assuming that the trial court erred by granting a continuance, . . . reversal is not warranted in the circumstances of this case." *Id.* at 1116-17.

[9] Mr. Flowers also argues that remand is required because the trial court failed to make explicit findings of fact or conclusions of law in granting the government's motion. This argument is inconsistent with our case law, as we have affirmed a trial court's continuance ruling even though "the exact basis" for the ruling was "unclear." *M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 190 (D.C. 1992). Moreover, even assuming that the trial court erred in failing to make express findings of fact and conclusions of law, any such error was harmless because Mr. Flowers was not prejudiced by the continuance.

*So ordered.*